UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

LEAGUE OF WOMEN VOTERS OF
FLORIDA, INC., THE ANDREW
GOODMAN FOUNDATION, INC.,
MEGAN NEWSOME, AMOL
JETHWANI, MARY ROY a/k/a JAMIE
ROY, DILLON BOATNER,
ALEXANDER ADAMS, AND ANJA
RMUS,

    Plaintiffs,

v.

KENNETH DETZNER, in his official
capacity as the Florida Secretary of State,

    Defendant.

Case No. 4:18-cv-00251-MW-CAS

**RULE 12(B) MOTION TO ABSTAIN FROM EXERCISE OF
FEDERAL JURISDICTION AND STAY PROCEEDINGS OR, IN THE
ALTERNATIVE, RULE 12(B)(1) AND 12(B)(6) MOTION TO DISMISS
WITH ACCOMPANYING MEMORANDUM OF LAW**

## I.    Introduction

When Florida first enacted an early voting law in 2004, supervisors of

elections were permitted to offer the service in only three types of facilities:

(1) the supervisor's office, (2) a city hall, and (3) a public library.[1]  § 101.657, Fla.

---

[1] This Motion refers to the Plaintiffs collectively as "Plaintiffs," Florida Secretary of State Kenneth Detzner as "Secretary," and the First Amended Complaint for Declaratory and Injunctive Relief as "ECF 16."  While the Plaintiffs refer to the 2014 Advisory Opinion issued by the Director, Division of Elections as the "Secretary's interpretation and application," ECF 16 at ¶ 1, this Motion refers to it as the "Division's 2014 Advisory Opinion" for the sake of correctness and clarity.

Stat (2004).  This list of permissible early voting sites remained unchanged from 2004 until 2013.  In 2013, based on the Secretary's recommendations, the Florida Legislature enacted and the Governor signed legislation dramatically expanding the types of sites where supervisors of elections were permitted to offer early voting.  These new sites include – in addition to the supervisor's office, city halls, and public libraries – any fairgrounds, civic centers, courthouses, county commission buildings, stadiums, convention centers, government-owned senior centers, and government-owned community centers.  *See* Ch. 2013-57, § 13, Laws of Fla.  The same legislation permits supervisors of elections to designate one "wildcard" early voting site per election "in any area of the county that does not have any of the eligible early voting locations."  § 101.657(1)(a), Fla. Stat. (2013).

Stripped of the constitutional parlance necessary to allege a basis for federal jurisdiction, the Plaintiffs now argue a 2014 Advisory Opinion from the Division of Elections *interpreting* the 2013 amendments to Florida's early voting statute conflicts with the language of that statute.  The Plaintiffs do not sue the state supervisors of elections actually charged with selecting early voting sites.

The Secretary respectfully asks this Court to abstain from deciding the case. A state court, interpreting state law, can decide the case on narrow, statutory interpretation grounds and, perhaps, avoid any constitutional issues.  A state court's interpretation, reviewed by a single state appellate court, has the added

2

benefit of binding all Florida trial courts and promoting consistency throughout Florida. This Court's interpretation, even if reviewed by the Eleventh Circuit, would not bind the state courts and may sow the seeds of federal-state conflicts. Abstention is thus appropriate. A stay allowing the Plaintiffs to seek state court review is too.[2]

In the alternative, this Court should dismiss this case under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). The Plaintiffs cannot meet the redressability prong of Article III standing because they sue the Secretary – not the supervisors of elections actually charged with selecting early voting sites. The Plaintiffs also fail to state a cause of action because the early voting burdens they allege cannot be constitutionally cognizable. Notably, not a single Plaintiff alleges that the Plaintiff *could not* vote early. Most of the Plaintiffs allege that they *did in fact vote early*. The Plaintiffs' Complaint further alleges that there are early voting

---

[2] It is unclear whether Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6) serves as the vehicle for abstention. The Ninth Circuit highlighted, but did not "decide which Rule, if either, provides the correct vehicle for a motion to abstain." *Courthouse News Serv. v. Planet,* 750 F.3d 776, 779 n. 2 (9th Cir. 2014). The Eleventh Circuit said that abstaining and *then adjudicating the merits through Rule 12(b)(6)* is inappropriate, but provided no clear guidance for courts to otherwise follow. *Stone v. Wall,* 135 F.3d 1438, 1441 n. 3 (11th Cir. 1998); *see also Beaulieu v. Ala. Onsite Wastewater Bd.,* 373 Fed. Appx. 3, 5-6 (11th Cir. 2010) (noting but not "belaboring [abstention as an] alternative grounds for dismissal"). Regardless of whether this Court considers the request for abstention as a motion under Rule 12(b)(1) or a motion under Rule 12(b)(6), the Court should "treat the factual allegations in [the Plaintiffs'] Complaint as true." *Courthouse News,* 750 F.3d at 780. The Secretary does the same for purposes of this filing only.

locations approximately 1 mile from the campuses of both Florida State University and the University of Florida, and suggests that early voting sites on-campus would make it harder for others in the community to vote because of a lack of on-campus parking.  The Plaintiffs' allegations thus fail to state a cause of action under the First, Fourteenth, and Twenty-Sixth Amendments to the U.S. Constitution.

## II.   Statement of Case and Facts

The Division's 2014 Advisory Opinion now being challenged interprets § 101.657(1)(a) of the Florida Statutes. Section 101.657(1)(a) was part of broader reforms recommended by the Secretary, enacted by the Florida Legislature, and signed by the Governor to *expand* early voting sites.  ECF 16 at ¶¶ 45-48.

Section 101.657(1) provides:

> As a convenience to the voter, *the supervisor of elections* shall allow an elector to vote early in the *main or branch office of the supervisor*. The supervisor shall mark, code, indicate on, or otherwise track the voter's precinct for each early voted ballot. In order for a branch office to be used for early voting, it shall be a permanent facility of the supervisor and shall have been designated and used as such for at least 1 year prior to the election. The *supervisor may also designate any city hall, permanent public library facility, fairground, civic center, courthouse, county commission building, stadium, convention center, government-owned senior center, or government-owned community center as early voting sites*; however, if so designated, the sites must be geographically located so as to provide all voters in the county an equal opportunity to cast a ballot, insofar as is practicable. *In addition, a supervisor may designate one early voting site per election in an area of the county that does not have any of the eligible early voting locations*. Such additional early voting site must be geographically located so as to provide all voters in that area with an equal opportunity to cast a ballot, insofar as is practicable. Each

4

county shall, at a minimum, operate the same total number of early voting sites for a general election which the county operated for the 2012 general election. The results or tabulation of votes cast during early voting may not be made before the close of the polls on election day. Results shall be reported by precinct.

§ 101.657(1)(a), Fla. Stat. (emphasis added).  Section 101.657(1)(a) thus mandates that the *supervisors of elections* allow early voting in their "main or branch office[s]."  *Id.*  The *supervisors of elections* "may also designate any city hall, permanent public library facility, fairground, civic center, courthouse, county commission building, stadium, convention center, government-owned senior center, or government-owned community center as early voting sites."  *Id.*  And, importantly, the *supervisors of elections* are allowed one "wildcard" site – "one early voting site . . . in an area of the county that does not have any of the [other] eligible early voting locations."  *Id.*

In late 2013, the City Attorney of Gainesville sought an advisory opinion from the Division of Elections regarding whether "the J. Wayne Reitz Union on the University of Florida campus constitutes a government-owned community center or a convention center for purposes of early voting under § 101.657."  ECF 16 at ¶ 56 (quoting Fla. Div. of Elec. Op. DE 14-01 at 1).

In January of 2014, the Division of Elections responded to the City Attorney's request.  The Division explained in its 2014 Advisory Opinion that the 2013 statute "expanded the options [for early voting sites] to include fairgrounds,

civic centers, courthouses, county commission buildings, stadiums, government-owned senior centers, convention centers, and government-owned community centers." Fla. Div. of Elec. Op. DE 14-01 at 2.  But the Division concluded that the J. Wayne Reitz Union did *not* qualify as a government-owned community center or a convention center."  *Id.*  The Division explained that "[t]he terms 'convention center' and 'government-owned community center' cannot be construed so broadly as to include the Reitz Union or any other college or university-related facilities." *Id.*  The Division further cited negative legislative history showing that the Florida Legislature had considered, but ultimately rejected, several proposals to include "educational facilities as optional early voting sites."  *Id.* (citing five proposals).

Section 106.23 of the Florida Statutes limits the effect of the Division's 2014 Advisory Opinion.  It provides that, "until amended or revoked," the Advisory Opinion binds only the "person or organization who sought the opinion or with reference to whom the opinion was sought, unless material facts were omitted or misstated in the request for the advisory opinion."  § 106.23(2), Fla. Stat.

More than four years later, in May of 2018, the Plaintiffs filed this challenge against the Division's 2014 Advisory Opinion interpreting the 2013 statute.  The Plaintiffs insist that the state statute's "plain" language requires a contrary interpretation.  ECF 16 at ¶¶ 4, 17-22, 51-60, 63, 94.  But the Plaintiffs plead their

state statutory construction challenge as violations of the First, Fourteenth, and Twenty-Sixth Amendments to the U.S. Constitution.  *Id.* at ¶¶ 79-98.

Plaintiff, the League of Women Voters, alleges that "approximately 225" of its student members "have [suffered] and will suffer injury" because they "will find it highly difficult – and, in some cases, impossible – to travel to their closest voting site."  *Id.* at ¶ 15.  The League names only one of these student members, Plaintiff, Dillon Boatner, as an affected student member even though he is not actually registered to vote in the same county as his university; fails to enumerate how many of its student members are registered to vote and thus affected; or otherwise identify student members who would be adversely affected.

Plaintiff, the Andrew Goodman Foundation, alleges that it has chapters at the University of Florida and at Miami Dade College campuses.  *Id.* at ¶ 16.  The Foundation alleges that its "Student Ambassadors," and the "student members of the communities" served, "will find it highly difficult – and, in some cases, impossible – to travel to their closest voting site."  *Id.*  The Foundation does not specifically name any of these student members; enumerate how many of these student members are registered to vote and thus affected; or otherwise identify any student members who would be adversely affected.

Plaintiff, Megan Newsome, alleges that without an early voting site on the University of Florida campus, early voting for her "is likely to be burdensome."

7

*Id.* at ¶ 17.  She alleges, however, that she has "consistently used early voting" and has previously voted early while a student at the University of Florida.  *Id.*  While she allegedly has previously worked with the Andrew Goodman Foundation and preregistered to vote with the Florida League of Women Voters, Ms. Newsome does not allege that she is a member of either organization.  *Id.*  She lives 3 miles from campus and 5 miles from the closest early voting site used in 2016.  *Id.*  She takes a bus to campus because "parking on campus is difficult."  *Id.*

Plaintiff, Amol Jethwani, also alleges that he has "consistently voted early" and has previously voted early while a student at the University of Florida.  *Id.* at ¶ 18.  He allegedly lives four blocks from campus and 1.5 miles from the closest early voting site used in 2016.  *Id.*

Plaintiff, Mary Roy, allegedly voted early in 2016 while a student at the University of Florida.  *Id.* at ¶ 19.  The trip from home to campus allegedly "takes between 40 minutes to an hour each way."  *Id.*  The Complaint makes no mention of how long it took Plaintiff, Roy, to vote early at a public library in 2016.

Plaintiff, Dillon Boatner, allegedly intends to change his voter registration so that he can vote early in Alachua County during the 2018 election.  *Id.* at ¶ 20.  He claims to have previously lived 3 miles from the University of Florida campus.  *Id.*  He alleges that "parking on campus is difficult."  *Id.*  The Complaint makes no

mention of the location or distance to the closest previous (or eligible) early voting site from him.  *Id.*

Plaintiff, Alexander Adam, also allegedly intends to vote early in 2018.  *Id.* at ¶ 21.  He claims to live on campus in the Florida State University student dorms. *Id.*  "In the 2016 general election, the closest voting location to Mr. Adam's residence was located 1.0 miles away at the Leon County Courthouse."  *Id.*

Finally, Plaintiff, Anja Rmus, allegedly intends to vote early in 2018.  *Id.* at ¶ 22.  She alleges to have previously voted in the first election for which she was eligible to vote while a student at the University of Florida.  *Id.*  She allegedly lives one block from campus and "walks everywhere."  *Id.*  "In the 2016 general election, the closest early voting location to Ms. Rmus's residence was located 1.2 miles away, at the Gainesville Office of the Supervisor of Elections."  *Id.*

## III.   Relevant Legal Standards

"It is axiomatic that the federal courts should, where possible, avoid reaching constitutional questions."  *Allstate Ins. Co. v. Serio,* 261 F.3d 143, 149-50 (2d Cir. 2001).  There is no "doctrine more deeply rooted . . . in the process of constitutional adjudication."  *Spector Motor Serv., Inc. v. McLaughlin,* 323 U.S. 101, 105 (1944).  As such, "where possible, [the federal] courts will render decisions on federal constitutional questions unnecessary by resolving cases on the basis of state law (whether statutory or constitutional)."  *Allstate,* 261 F.3d at 150;

9

*see also Bell v. Maryland,* 378 U.S. 226, 237 (1964) (noting "policy of refusing to decide a federal question in a case that might be controlled by a state ground").

Where state law is uncertain or unsettled, however, the federal courts should abstain from deciding cases until the state courts have had an opportunity to interpret the uncertain or unsettled state law. This type of abstention – *Pullman* abstention – comports with the principles of federal-state comity, and helps avoid premature constitutional adjudication. *See R.R. Comm'n of Tex. v. Pullman Co.,* 312 U.S. 496, 501 (1941); *cf. Arizonans for Official English v. Arizona,* 520 U.S. 43, 76, 79 (1997) (discussing advantages of "plac[ing] state-law questions in [state] courts equipped to rule authoritatively on them" and avoiding "friction" with state law); *Lehman Bros. v. Schein,* 416 U.S. 386, 391 (1974) (same).

Two elements must be met for *Pullman* abstention to apply: (1) the case must present an unsettled question of state law, and (2) the question of state law must be dispositive of the case or would materially alter the constitutional question presented. *Harman v. Forssenius,* 380 U.S. 528, 534 (1965). Both are met here.

If this Court does not abstain from exercising federal jurisdiction, then the Plaintiffs must still satisfy *their burden* of establishing standing under Article III of the U.S. Constitution. *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.,* 641 F.3d 1259, 1265 (11th Cir. 2011) (citations omitted). This "irreducible constitutional minimum" requires the Plaintiffs to establish (1) an actual or

imminent injury, (2) causation, and (3) redressability. *Id.* The redressability element requires the Plaintiffs to establish that "it must be likely, as opposed to merely speculative, that the injury [they allege] will be redressed by a favorable decision." *Id.* at 1266. The Plaintiffs cannot satisfy the redressability element.

The *Anderson-Burdick* standard, as it is called, governs the substance of the Plaintiffs' claims under the First, Fourteenth, and Twenty-Sixth Amendments.[3] This standard seeks to balance the burdens that election laws impose on the right to vote with the justification for those burdens. *See Anderson v. Celebrezze,* 460 U.S. 780, 789 (1983); *Burdick v. Takushi,* 504 U.S. 428, 433 (1992).

In considering the level of scrutiny to apply when considering a challenge to an election law, here the Division's 2014 Advisory Opinion, the *Anderson-Burdick* standard states that this Court "must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the

---

[3] There is "a dearth of guidance on what test applies to Twenty-Sixth Amendment claims." *N.C. State Conf. of the NAACP v. McCrory,* 182 F. Supp. 3d 320, 322 (M.D.N.C. 2016); *see also Walgren v. Bd. of Selectmen of Amherst,* 519 F.2d 1364, 1366-67 (1st Cir. 1975); *Nashville Student Org. Comm. v. Hargett,* 155 F. Supp. 3d 749, 755 (M.D. Tenn. 2015). The Secretary assumes for purposes of this Motion that the *Anderson-Burdick* standard applies to this claim as well as the other constitutional claims.

plaintiff's rights.'" *Burdick,* 504 U.S. at 434 (quoting *Anderson,* 460 U.S. at 789). "This standard is sufficiently flexible to accommodate the complexities of state election regulations while also protecting the fundamental importance of the right to vote." *Obama for Am. v. Husted*, 697 F.3d 423, 429 (6th Cir. 2012).   When voting rights are subjected to "severe" restrictions, the regulation at issue must be "'narrowly drawn to advance a state interest of compelling importance.'"   *Norman v. Reed*, 502 U.S. 279, 289 (1992).  If the right to vote is not burdened at all, then rational basis review applies.  *Ne. Ohio Coal. for the Homeless v. Husted*, 696 F.3d 580, 592 (6th Cir. 2012).   The Plaintiffs' Complaint fails to allege any constitutionally cognizable burdens here, and thus fail to state a claim for relief.

## IV.   <u>Argument:  This Court Should Abstain.</u>

The proper interpretation of § 101.657(1) presents an unsettled question of state statutory interpretation.   Resolution of this unsettled question of state statutory interpretation could clear any actual (or perceived) barriers the Division's 2014 Advisory Opinion creates for supervisors of elections charged with selecting early voting sites, and allow this Court to avoid the constitutional questions that the Plaintiffs pose.  Having the state courts resolve the state statutory interpretation issue would also provide the surest and quickest path to a definitive resolution of the Plaintiffs' concerns about the Division's 2014 Advisory Opinion.

### A.     This case concerns an unsettled question of state statutory interpretation.

State law is unsettled where it is "susceptible" to at least one interpretation that avoids a constitutional question, *Bellotti v. Baird,* 443 U.S. 622, 628 (1979); where there is no binding state precedent on the issue, *Pustell v. Lynn Pub. Sch.,* 18 F.3d 50, 54 (1st Cir. 1994); where, for example, a state's election-related statutes are "silent" as to the definition of key terms, or "the legislative history" is "equivocal," *Robinson v. Omaha,* 866 F.2d 1042, 1044 (8th Cir. 1989); or where there are unsettled questions about the validity of available guidance under state law.  *See Ratcliff v. Cnty. of Buncombe,* 759 F.2d 1183, 1187 (4th Cir. 1985). "[D]efinitive ruling[s]" or interpretations by state administrative agencies are not enough to settle a question of state law.  *Chez Sez III Corp. v. Twp. Of Union,* 945 F.2d 628, 632 (3d Cir. 1991).   This is especially true where, as here, the interpretation is "binding [only] on any person or organization who sought the opinion or with reference to whom the opinion was sought."  § 106.23(2), Fla. Stat.

This case presents an unsettled question of state statutory interpretation. Section 101.657(1) allows Florida's 67 supervisors of elections (and municipalities holding municipal elections) to "designate any city hall, permanent public library facility, fairground, civic center, courthouse, county commission building, stadium, convention center, government-owned senior center, or government-owned community center as early voting sites."  Chapter 101 of the Florida Statutes does

13

not include any statutory definitions of "government-owned community center[s]" or "convention center[s]." There are no cases addressing the issue. The City Attorney of Gainesville sought advice from the Division of Elections because of the ambiguity. The Division relied on the text *and* the legislative history in its 2014 Advisory Opinion. Florida cases like *Holly v. Auld*, 450 So. 2d 217, 219 (Fla. 1984) explain that reliance on legislative history is appropriate only when the statutory text is unclear.

The Plaintiffs disagreement with the Division's interpretation only adds to the fog. The Plaintiffs argue that the absence of any "limit[ing] or exclu[sionary]" statutory text suggests that the Florida Legislature intended to allow the use of college, university, and educational facilities. *E.g.,* ECF 16 at ¶ 53. But Florida cases like *Schoeff v. R.J. Reynolds Tobacco Co.,* 232 So. 3d 294, 304 (Fla. 2017) suggest that the Florida Legislature's failure to specifically include college, university, and educational facilities prohibits their use.

State law then is unsettled.

### B.   *The unsettled question of state law could be dispositive and avoid all constitutional questions.*

Resolution of the state statutory interpretation question could avoid the need for this Court to decide the Plaintiffs' election-related constitutional claims. *de la Fuente v. Cortes,* 207 F. Supp. 3d 441 (M.D. Pa. 2016) provides a recent example of just this. There, an independent candidate for President of the United States

sought emergency relief to secure a place on the Pennsylvania ballot less than three months before the November election.  *Id.* at 444.  The Pennsylvania Secretary of State had earlier rejected the candidate's qualifying papers under Pennsylvania's sore loser provision – a provision intended to prevent losers of party primaries from running in the general election.  *Id.*  The candidate argued that the rejection was inconsistent with the plain text of the sore loser provision, which the candidate claimed did not apply to presidential primaries, and "unconstitutionally impose[d] additional qualifications on candidates for federal office in violation of the Qualification Clause of Article II and the First and Fourteenth Amendments of the United States Constitution."  *Id.* at 445.  The court abstained from deciding the case, explaining "[i]f the state court concur[ed] with [the candidate]'s interpretation of the [sore loser provision], then the state law [would] not apply to [the candidate] whatsoever, and the basis for [the candidate]'s constitutional claim would be eliminated."  *Id.* at 450 (citations omitted).

This case presents much the same issue.  The Plaintiffs allege that the Division's 2014 Advisory Opinion is inconsistent with the plain statutory text. ECF 16 at ¶¶ 4, 17-22, 51-60, 63, 94.  If the state courts agree with the Plaintiffs, then that state judgment would further limit the 2014 Advisory Opinion's already limited reach under § 106.23(2) and clear any barriers the Plaintiffs think the 2014

Advisory Opinion erects.   As in *de la Fuente,* "the basis for the Plaintiff[s']

constitutional claim would be eliminated."   *de la Fuente,* 207 F. Supp. 3d at 450.[4]

The two elements for *Pullman* abstention are thus met.

### C.   Abstention provides the surest and quickest path to a resolution of the Plaintiffs' concerns.

Prudential concerns also favor abstention.   Even if this Court were to decide

the state statutory interpretation issue to avoid the constitutional questions, this

Court's interpretation would not bind the Florida courts.   *See, e.g., State v. Dwyer,*

332 So. 2d 333, 334 (Fla. 1976).   Nor would the Eleventh Circuit's interpretation

bind the Florida courts.   *Id.*   Litigants elsewhere in the state would remain free to

precipitate a federal-state conflict on the issue.   But if a state trial court addresses

the issue and then one of Florida's intermediate appellate courts reviews the

matter, then that state court interpretation would bind all of Florida's lower courts

and avoid the possibility of federal-state conflicts.   Starting in state court thus

---

[4] The Eleventh Circuit's election-related abstention decision in *Siegel v. LePore,* 234 F.3d 1163 (11th Cir. 2000) is notable only because it is distinguishable.   *Siegel* stemmed from recounts of Florida's 2000 election.   *Id.* at 1168.   There, the Republican candidates for President and Vice President sought to enjoin four Florida counties from conducting manual recounts of ballots cast.   *Id.*   The candidates alleged "that Florida's manual recount provision [was] unconstitutional because the statute d[id] not provide sufficient standards to guide the discretion of county canvassing boards."   *Id.* at 1174.   The county canvassing boards raised abstention as a response.   *Id.*   The Eleventh Circuit decided against abstention because "[t]here ha[d] been no suggestion by [the canvassing boards] that the statute [was] appropriately subject to a more limited construction" that would avoid the constitutional questions posed.   *Id.*   That is not the case here.

provides a shorter path to a definitive ruling. *See Pardo v. State,* 596 So. 2d 665, 666 (Fla. 1992) ("Thus, in the absence of interdistrict conflict, district court decisions bind all Florida trial courts.").

Abstention now offers the best chance of promoting consistency, certainty, and finality later.

V. **Argument:   In the Alternative, this Court Should Dismiss the Complaint for Lack of Subject Matter Jurisdiction or for Failure to State a Cause of Action.**

If this Court does not abstain from exercising federal jurisdiction, then the Secretary respectfully asks this Court to dismiss the case.   The Plaintiffs cannot satisfy the redressability element for Article III standing.   And, separately, the Plaintiffs fail to allege a cause of action under the *Andersen-Burdick* standard.

A. *The Plaintiffs cannot satisfy the redressability element.*

Redressability is an "irreducible constitutional minimum" the Plaintiffs must establish for standing. *Hollywood Mobile Estates,* 641 F.3d at 1265.   It is a constitutional minimum the Plaintiffs do not adequately allege much less establish.

The Plaintiffs do not sue any of the supervisors of elections. *See* ECF 16. Nor do the Plaintiffs seek any relief against these 67 duly-elected constitutional officers charged with exercising *discretion* in the selection of early voting sites within their respective counties. *Id.* at 47-48, 51; *see also* Art. VIII, § 1, Fla. Cont.; § 101.657(1)(a), Fla. Stat.   Yet, even if the Plaintiffs succeed, the Secretary

cannot simply direct these 67 separate, duly-elected constitutional officers to select on-campus early voting sites to ease the adverse effects that Plaintiffs' allege.[5]

In addition, the Plaintiffs fail to allege – much less establish – that the supervisors of elections in Alachua or Leon Counties would choose to offer early voting at the universities in question even if this were permitted under the law. The Plaintiffs' allegations concerning the lack of available parking at the universities, ECF 16 at ¶¶ 17, 20, make it *less* likely that the supervisors of elections would actually choose on-campus early voting sites.  The supervisors of elections, who must take care to ensure that early voting sites "provide all voters in the county an equal opportunity to cast a ballot," might well conclude that sites at the universities lack adequate and available parking such that using these locations would do the electorate a disservice.  § 101.657(1)(a), Fla. Stat.

---

[5] This Court's prior opinion in *Fla. Democratic Party v. Detzner,* 2016 U.S. Dist. LEXIS 143620 (Oct. 16, 2016) is distinguishable.  There, the Secretary argued that he was not the appropriate defendant in a case concerning Florida's mismatched-signature ballot scheme.  *Id.* at *13-16.  This Court disagreed, reasoning that the Secretary had the power to direct the supervisors of elections that (1) Florida's scheme was unconstitutional, and (2) the supervisors (and canvassing boards) were required to allow mismatched-signature ballots to be cured in the same fashion as nonsignature ballots.  *Id.* at *13-16, *28-29.  Notably, however, this Court stated that the Secretary's argument "would have more merit" were this Court being "asked to order [the Secretary] to direct the individual supervisors of elections to implement specific procedures (which are ordinarily discretionary)."  *Id.* at *15. Here redressability of the Plaintiffs' burdens – their inability to vote on campus – ultimately depends on the discretion of each county's supervisor of elections.  *Fla. Democratic Party* then is distinguishable.

While the Plaintiffs are charged with showing that "it must be likely, as opposed to merely speculative, that the injury [they allege] will be redressed by a favorable decision," the Plaintiffs fail to carry their burden. *Hollywood Mobile Estates,* 641 F.3d at 1266. The Plaintiffs' Complaint asks nothing of the elected constitutional officers charged with selecting early voting sites; fails to allege facts that make the selection of on-campus early voting sites in Alachua and Leon Counties likely, as opposed to speculative; and actually includes allegations that undercut the use of on-campus early voting sites even if they prevail here.

The Plaintiffs lack standing and this Court lacks subject matter jurisdiction.

### B.    *The Plaintiffs' Complaint fails to allege a cause of action.*

Even if the Plaintiffs have standing, they still fail to state a cause of action. The *Andersen-Burdick* standard requires this Court to balance the burdens that election laws impose with the justifications for those burdens. *See Anderson,* 460 U.S. at 789; *Burdick,* 504 U.S. at 433. Yet the Plaintiffs fail to allege any actionable burdens, making dismissal under Rule 12(b)(6) appropriate.

Specifically, the Plaintiffs' Complaint fails to allege a *single* instance of a voter actually being unable to vote because of the Division's 2014 Advisory Opinion. The Andrew Goodman Foundation fails to name a single member

harmed by the 2014 Advisory Opinion.[6]   The League of Women Voter's only named Plaintiff is not even registered to vote in Alachua County, the home of the University of Florida.[7]   Many of the named Plaintiffs voted early in previous elections.   And the named Plaintiffs state that early voting sites are or have previously been available within approximately 1 mile of the Florida State University and University of Florida campuses – the only two campuses relevant to the named Plaintiffs.   ECF 16 at ¶¶ 21-22.   The Plaintiffs would thus have this Court conclude that early voting sites approximately 1 mile from college campuses create a constitutionally cognizable undue burden when many of the named Plaintiffs commute several miles (or up to one hour each way) to campus, some

---

[6] In a related vein, the Andrew Goodman Foundation does not have associational standing. An association must "identify [a] member[] who ha[s] suffered the requisite harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009); *see also Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016). The Andrew Goodman Foundation fails to identify a single such member.

[7] The League of Women Voters does not have associational standing either. To have associational standing, the League must show (1) at least one of its members possesses standing to sue in his or her own right, (2) the interests of the suit seek to vindicate are germane to the association's purpose, and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). Because Plaintiff, Dillon Boatner, a student member of the League, does not possess standing to sue in his own individual right, nor state a cause of action, the League lacks standing to sue by association.

"walk everywhere" or live on or near campus, and have a difficult time finding parking on campus itself.  ECF 16 at ¶¶ 17-22.

The Plaintiffs ask for too much and allege too little.  Having to go 1 mile off campus for college-aged voters who have a history of actually voting in elections cannot impose a constitutionally cognizable burden or serve as the basis for a plausible claim for relief.  *See, e.g., McDonald v. Bd. of Election Comm'rs,* 394 U.S. 802, 808 (1969) ("[W]e cannot lightly assume, with nothing in the record to support such an assumption, that Illinois has precluded appellants from voting."); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007) (requiring "enough facts to state a claim to relief that is plausible on its face," and explaining that mere "labels and conclusions" are not enough); *Az. Libertarian Party v. Reagan*, 798 F.3d 723, 736 n. 12 (9th Cir. 2015) (stating that "Plaintiffs failed to adduce evidence of *any* burden at all" and "absent *any* burden, there is no reason to call on the State to justify its practice," and explaining that a *de minimis* burden is "assuredly not an infringement of constitutional dimension").

## VI.   <u>Conclusion</u>

For the foregoing reasons, the Secretary respectfully asks this Court to abstain from deciding the case.  These proceedings should be stayed and the Plaintiffs given an opportunity to seek a resolution of the narrow state statutory construction issue that could prove dispositive.  *See generally England v. La. State*

*Bd. of Med. Exam'rs,* 375 U.S. 411, 419-22 (1964) (discussing process accompanying abstention); *Doe v. McCulloch,* 835 F.3d 785, 788-89 (8th Cir. 2016) (explaining that stay accompanying abstention is proper).

In the alternative, this Court should dismiss this case for lack of subject matter jurisdiction under Rule 12(b)(1) because the Plaintiffs cannot satisfy the redressability element of Article III standing, or for failure to state a cause of action under Rule 12(b)(6) because the Plaintiffs fail to allege any constitutionally cognizable burdens that result in a constitutional deprivation.

*** 

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULES

The undersigned certifies that this Motion complies with the size, font, and formatting requirements of Local Rule 5.1(C).  The undersigned further certifies that this Motion complies with the word limit in Local Rule 7.1(F); this Motion contains 6,229 words, excluding the case style, signature block, and certificates.

***

Respectfully submitted by:

DAVID A. FUGETT  (FBN 117498)
  *General Counsel*
  david.fugett@dos.myflorida.com
JESSE DYER (FBN 114593)
  *Assistant General Counsel*
  jesse.dyer@dos.myflorida.com
FLORIDA DEPARTMENT OF STATE
R.A. Gray Building Suite, 100
500 South Bronough Street
Tallahassee, Florida 32399-0250
Phone:  (850) 245-6536
Fax:  (850) 245-6127

*/s/ Mohammad O. Jazil*
MOHAMMAD O. JAZIL (FBN 72556)
  mjazil@hgslaw.com
GARY V. PERKO (FBN 855898)
  gperko@hgslaw.com
MALCOLM N. MEANS  (FBN 0127586)
  mmeans@hgslaw.com
HOPPING GREEN & SAMS, P.A.
119 South Monroe Street, Suite 300
Tallahassee, Florida 32301
Phone: (850) 222-7500
Fax:  (850) 224-8551

Dated:  June 15, 2018          ***Counsel for the Secretary of State***

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via transmission of a Notice of Electronic Filing through the Court's CM/ECF system to the following on this 15th day of June, 2018:

Frederick S. Wermuth
KING, BLACKWELL, ZEHNDER
&WERMUTH, P.A.
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472
Facsimile: (407) 648-0161
fwermuth@kbzwlaw.com

Marc E. Elias
Elisabeth C. Frost*
Amanda Callais*
Jacki L. Anderson*
John M. Geise*
Alexi M. Velez*
PERKINS COIE LLP
700 Thirteenth St., N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-9959
melias@perkinscoie.com
efrost@perkinscoie.com
acallais@perkinscoie.com
jackianderson@perkinscoie.com
jgeise@perkinscoie.com
avelez@perkinscoie.com
*Admitted Pro Hac Vice*

*Counsel for the Plaintiffs*

/s/ Mohammad O. Jazil
Attorney