UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

LEAGUE OF WOMEN VOTERS OF
FLORIDA, INC., THE ANDREW
GOODMAN FOUNDATION, INC.,
MEGAN NEWSOME, AMOL
JETHWANI, MARY ROY a/k/a JAMIE
ROY, DILLON BOATNER,
ALEXANDER ADAMS, and ANJA
RMUS,

     Plaintiffs,

v.

KENNETH W. DETZNER, in his official
capacity as the Florida Secretary of State,

     Defendant.

Case No. 4:18-cv-00251
(MW/CAS)

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S RULE 12(B) MOTION TO ABSTAIN FROM EXERCISE OF JURISDICTION AND STAY PROCEEDINGS OR, IN THE ALTERNATIVE, RULE 12(B)(1) AND 12(B)(6) MOTION TO DISMISS

**<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES ................................................................ ii

I.   INTRODUCTION .................................................................1

II.  ARGUMENT.........................................................................5

     A.   Abstention in This Case Is Inappropriate ..............................5

          1.   Abstention Would Run Contrary to Nearly Fifty Years of
               Eleventh Circuit Precedent Disapproving of Abstention
               in Voting Rights Cases ..................................................6

          2.   The Secretary Fails to Satisfy Other Key Requirements
               for *Pullman* Abstention...................................................8

               a.  This Case Does Not Involve An Unsettled Issue of
                   State Law ...............................................................11

               b.  Abstention Would Delay, Not Expedite, Resolution of
                   Plaintiff's Claims ..................................................15

     B.   Plaintiffs Have Standing to Pursue Their Claims .................18

          1.   The League, AGF, and the Individual Voter Plaintiffs
               Have Standing.............................................................19

          2.   Plaintiffs' Constitutional Injuries Are Sufficiently Redressable
               by a Favorable Ruling.................................................23

     C.   Plaintiffs Have Alleged Legally Cognizable Claims ...........28

III. CONCLUSION...........................................................................31

## TABLE OF AUTHORITIES

*Anderson v. Celebrezze*,
    460 U.S. 780 (1983).................................................................29

*Arcia v. Fla. Sec. of State*,
    772 F.3d 1335 (11th Cir. 2014) ...........................................22

*Arizona Libertarian Party v. Reagan*,
    798 F.3d 723 (9th Cir. 2015) ...............................................30

*Baggett v. Bullitt*,
    377 U.S. 360 (1964)..........................................................9, 16

*Bonner v. City of Prichard*,
    661 F.2d 1206 (11th Cir. 1981) .............................................6

*BT Inv. Managers, Inc. v. Lewis*,
    559 F.2d 950 (5th Cir. 1977) .................................................9

*Burdick v. Takushi*,
    504 U.S. 428 (1992).........................................................29, 30

*Cf. Robertson v. Wegmann*,
    436 U.S. 584 (1978)..............................................................28

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983)................................................................21

*Common Cause/Georgia v. Billings*,
    554 F.3d 1340 (11th Cir. 2009) .....................................19, 22

*Common Cause Indiana v. Marion Cty. Election Bd.*,
    2018 WL 1940300, No. 1:17–cv–01388–SEB–TAB
    (S.D. Ind. Apr. 25, 2018) ....................................................29

*Crawford v. Marion Cty. Election Bd.*,
    553 U.S. 181 (2008)..............................................................29

*de la Fuente v. Cortes*,
    207 F. Supp. 3d 441 (M.D. Pa. 2016)....................................................9

*Doe v. Miller*,
    573 F. Supp. 461 (N.D. Ill. 1983) .....................................................27

*Duke v. James*,
    713 F.2d 1506 (11th Cir. 1983) ........................................................10

*Duncan v. Poythress*,
    657 F.2d 691 (5th Cir. Unit B 1981)...........................................7, 15, 16

*Edwards v. Sammons*,
    437 F.2d 1240 (5th Cir. 1971) .....................................6, 7, 8, 11, 16

*England v. Louisiana State Board of Medical Examiners*,
    375 U.S. 411 (1964)........................................................................16

*Fla. Democratic Party v. Detzner*,
    No. 4:16cv607-MW/CAS, 2016 WL 6090943, at *8 (Oct. 16, 2016) .........16, 24

*Fla. State Conf. of the NAACP v. Browning*,
    522 F.3d 1153 (11th Cir. 2008) ....................................................22, 23

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000)........................................................................21

*Government and Civic Emps. Org. Comm., CIO v. Windsor*,
    353 U.S. 364 (1964)........................................................................16

*Harper v. Va. State Bd. of Elections*,
    383 U.S. 663 (1966)........................................................................29

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982)........................................................................22

*Holly v. Auld*,
    450 So. 2d 217 (Fla. 1984)..............................................................13

*McDonald v. Bd. of Election Comm'rs,*
    394 U.S. 802 (1969) .................................................................................30

*Menchaca v. Chrysler Credit Corp.,*
    613 F.2d 507, 511 (5th Cir.), *cert. denied*, 449 U.S. 953 (1980) .....................21

*Ne. Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville, Fla.,*
    508 U.S. 656 (1993) .................................................................................20

*Norman v. Reed,*
    502 U.S. 279 (1992) .................................................................................30

*Obama for Am. v. Husted,*
    697 F.3d 423 (6th Cir. 2012) ...................................................4, 16, 26, 28, 29, 30

*Quackenbush v. Allstate Ins. Co.,*
    517 U.S. 706 (1996) ...................................................................................9

*Railroad Comm'n of Texas v. Pullman Co.,*
    312 US 496 (1941) .....................................................................................2

*Schoeff v. R.J. Reynolds Tobacco Co.,*
    232 So. 3d 294 (Fla. 2017) ......................................................................15

*Siegel v. LePore,*
    234 F. 3d 1163 (11th Cir. 2000) ...........................................................6, 7, 10

*Strang v. Satz,*
    866 F. Supp. 542 (S.D. Fla. 1994) .........................................................11

*Town of Chester, N.Y. v. Laroe Estates, Inc.,*
    137 S. Ct. 1645, 198 L. Ed. 2d 64 (2017) ..............................................19

*Weisberg v. Powell,*
    417 F.2d 388 (7th Cir. 1969) .................................................................15

*Wesberry v. Sanders,*
    376 U.S. 1, 17 (1964) ................................................................................1

Statutes and Other Authority

Art. II. § 5(b), Fla. Const. ...........................................................................17

Fla. Stat. at §§ 97.012 ...........................................................................3, 24

Fla. Stat. § 101.657 (1)(a) .............................................................1, 12, 13, 23

James Bedell, *Clearing the Judicial Fog: Codifying Abstention*,
    68 Case W. Res. L. Rev. 943, 961 (2018) ..........................................9

Rex E. Lee & Richard G. Wilkins, *An Analysis of Supplemental Jurisdiction
    and Abstention with Recommendations for Legislative Action*,
    1990 B.Y.U. L. Rev. 321, 340 (1990) ..................................................9

Robert Dodsley, The Chronicle of the Kings of England,
    From William the Norman to the Death of George III (1821) at 27 .................27

U.S. Const. amend. XXVI, § 1 ........................................................5, 31

## I.   INTRODUCTION

"No right is more precious . . . than that of having a voice in the election of those who make the laws." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964). This case is about Defendant the Florida Secretary of State's (the "Secretary") actions muting the voices, in particular, of Florida's young voters, through his impermissible and unconstitutional construction of Fla. Stat. § 101.657 (1)(a) (the "Statute") to prohibit supervisors of elections ("SOEs") from placing early vote locations in any facilities "related" to, "designed for," "affiliated with," or "part of" a college or university. Dep't of Elections Advisory Op., ECF No. 24-1 (the "Opinion").[1]

Plaintiffs allege that the Secretary's restrictive interpretation of the Statute (which the Secretary does not deny the State's SOEs have universally obeyed), violates the First, Fourteenth, and Twenty-Sixth Amendments to the U.S. Constitution, and have filed a motion for a preliminary injunction, supported by

---

[1] The Statute states, in relevant part, that local SOEs "may . . . designate *any* city hall, permanent public library facility, fairground, civic center, courthouse, county commission building, stadium, convention center, government-owned senior center, or government-owned community center as early voting sites . . . ." Fla. Stat. § 101.657(1)(a) (emphasis added). The circumstances surrounding the Opinion through which the Secretary decreed that "any," in fact, means "any . . . *except* where such facilities are associated with a college or university," the purported justifications for that construction, and its impact on Florida's young voters are addressed at length in Plaintiffs' Motion for Preliminary Injunction and are not repeated here, except where necessary to address the Secretary's arguments in his Motion to Abstain or Dismiss.

overwhelming evidence, in an attempt to have discretion restored to SOEs to place early voting sites in facilities associated with colleges and universities in the upcoming August primary and November general elections. *See* First Am. Compl. ¶¶ 78-97 (ECF No. 16); Pls.' Mot. for Preliminary Injunction ("PI Mot.") (ECF Nos. 22, 36). The Secretary, through his Motion to Abstain or Dismiss ("Mot.") (ECF No. 20), seeks to deny Plaintiffs their right to have this matter promptly adjudicated by this Court, or at the very least, severely delay these proceedings. For the reasons that follow, the Secretary's Motion is not well-founded and should be denied.

The Secretary's argument that this Court should abstain under *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941) ("*Pullman* abstention"), relies entirely on inapplicable precedent from other Circuits, ignoring the Eleventh Circuit's repeated admonitions that it is inappropriate to abstain in cases alleging violations of voting rights. But even if that were not the law in this Circuit (and it clearly is), the Secretary fails to identify any unsettled issue of state law that would warrant abstention, a fundamental requirement for abstention in *any* Circuit. The Secretary's assertion that abstention would provide the "surest and quickest path to a resolution of Plaintiffs' concerns," Mot. at 16, moreover, is simply not true. The "surest and quickest path" to address "Plaintiffs' concerns," of course, would be for the Secretary to withdraw the Opinion and make it clear to the SOEs that they

may place early voting sites in the types of facilities that are listed in the Statute, even if those facilities are associated with colleges or universities. Granting the Secretary's motion to abstain, in contrast, would delay resolution of this matter indefinitely. Indeed, in many cases, abstention results in cases dragging on for years, which is part of the reason that the Eleventh Circuit has held that it is inappropriate in cases implicating voting rights.

The Secretary's standing arguments are equally meritless. This Court has previously found the Secretary's argument that he is helpless to direct the SOEs wanting, and for good reason: it is squarely contrary to past practice—including, as evidenced by the history of this matter, where the SOEs have followed the Secretary's interpretation of the Statute as announced in his Opinion. It is also contrary to Florida law, which grants the Secretary authority to "[b]ring and maintain such actions at law or in equity by mandamus or injunction to enforce the performance of any duties of a county supervisor of elections or any official performing duties with respect to [Florida election law]." Fla. Stat. §§ 97.012(14), 97.012(16). Far from it being beyond the Secretary to redress Plaintiffs' injuries, it is the Secretary's edict that currently prevents the SOEs from even considering placing early voting sites on college and university campuses, and it is *only* the Secretary who can free them from that restriction, so that Plaintiffs may be given equal access to early voting.

Similarly, the Secretary's argument that Plaintiffs lack standing because the relief they seek would not guarantee that early voting sites are placed on campuses is incorrect as a matter of law. As an initial matter, it focuses only on Plaintiffs' Equal Protection claims, ignoring their Twenty-Sixth Amendment intentional discrimination claim entirely. It should be obvious that a decision invalidating the Secretary's construction of the Statute as intentionally discriminatory would, in its own right, remedy at least some of the injury that Plaintiffs have suffered as a result. But, this argument is also not supportable as it applies to *any* of Plaintiffs' claims; indeed, the Sixth Circuit rejected a nearly identical argument in a case that also concerned unequal access to early voting, where the injunction granted to the plaintiffs left the ultimate decision of whether to offer early voting on the days in question to the discretion of the local boards of elections. *See Obama for Am. v. Husted*, 697 F.3d 423, 437 (6th Cir. 2012).

Finally, the Court should also reject the Secretary's argument that Plaintiffs' Complaint must be dismissed because of some failure to plead an adequate injury, whether that argument is understood as a Rule 12(b)(1) attack on Plaintiffs' allegations as they relate to standing, or a Rule 12(b)(6) argument that the injury that Plaintiffs allege is not sufficient as a matter of law to sustain their constitutional claims. It is well-established that Plaintiffs may state an Equal Protection Claim where their right to vote is burdened, even if they are ultimately

able to surmount those burdens. Moreover, as for Plaintiffs' Twenty-Sixth Amendment claim, the Court need look no further than the plain text of the amendment, which forbids "deni[al] *or* abridge[ment]" of the right to vote "on account of age." U.S. Const. amend. XXVI, § 1 (emphasis added).

For these reasons, more fully set forth below, this Court should deny the Secretary's Motion to Abstain or Dismiss.

## II.    ARGUMENT

### A.    Abstention in This Case Is Inappropriate

The Secretary's argument that the Court should abstain from deciding this case by invoking *Pullman* abstention should be rejected. First, abstention here would be contrary to the well-established rule in the Eleventh Circuit that abstention is rarely appropriate where voting rights are at stake; the Secretary fails to even acknowledge this binding precedent, much less explain why this case should constitute the exception to the rule, and for that reason alone, the Court should decline to abstain. Second, the Secretary fails to identify an unsettled question of state law that would justify abstention, even if this were a case where the plaintiffs' fundamental rights were *not* at stake. Third, abstention would almost certainly result in substantial delay, which itself could cause Plaintiffs irreparable harm.

1.     **Abstention Would Run Contrary to Nearly Fifty Years of Eleventh Circuit Precedent Disapproving of Abstention in Voting Rights Cases**

The Secretary's request runs contrary to—indeed, *ignores*—clear and long-standing Eleventh Circuit precedent establishing that, where plaintiffs allege a constitutional violation of their voting rights, abstention is rarely appropriate. *See Siegel v. LePore*, 234 F.3d 1163, 1174 (11th Cir. 2000) (citing cases). The Secretary makes no effort to explain why the instant case should constitute an exception to "the general rule that abstention is not appropriate 'in cases involving such a strong national interest as the right to vote.'" *Id*. (quoting *Edwards v. Sammons*, 437 F.2d 1240, 1244 (5th Cir. 1971)).[2] Instead, the Secretary's Motion relies on distinguishable cases from other jurisdictions that have not placed as strong of an emphasis on the requirement that courts "must take into account the nature of the controversy and the importance of the right allegedly impaired." *Id*.

Although the Secretary's Motion does cite *one* of the authoritative cases from this Circuit in a footnote, it disingenuously suggests that "[t]he Eleventh Circuit decided against abstention" in that case simply because the defendants failed to "suggest[]" that the statute might be appropriately subject to a more limited construction. Mot. at 16 n.4 (arguing that "[*t*]*he* Eleventh Circuit's

---

[2] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

election-related abstention decision in *Siegel v. LePore* . . . is notable *only* because it is distinguishable") (emphases added). While it is true that the opinion in *Siegel* notes that the defendants did not raise such an argument, the Court then goes on to clearly state: "Our conclusion that abstention is inappropriate is strengthened by the fact that Plaintiffs allege a constitutional violation of their voting rights. In considering abstention, we *must* take into account the nature of the controversy and the importance of the right allegedly impaired." *Siegel*, 234 F.3d at 1174 (emphasis added). In support, the *Siegel* opinion cites multiple cases in this Circuit previously finding that "a federal court should be reluctant to abstain when voting rights are at stake," *id*. (citing *Duncan v. Poythress*, 657 F.2d 691, 697 (5th Cir. Unit B 1981)), and that there is a "general rule that abstention is not appropriate" in voting rights cases, *id*. (citing *Edwards*, 437 F. 2d at 1244).

The Secretary's brief mentions neither *Duncan* nor *Edwards*, nor does it attempt to explain how the Secretary's argument that abstention is appropriate so long as a party simply "suggests" that a constitutional claim may be avoided by a construction of state law, can be squared with the strong language over decades of precedent in the Circuit establishing that it is the rare, exceptional case when a court should abstain where plaintiffs raise federal constitutional claims to enforce their voting rights. *See, e.g*., *Duncan*, 657 F.2d at 699 ("At issue in this case is nothing less than the fundamental right to vote. The delay inherent in abstention is

least tolerable where, as here, fundamental constitutional rights enjoyed by a broad class of citizens would be suspended while adjudication begins in state court."); *Edwards*, 437 F.2d at 1241, 1244 (finding lower court *abused its discretion* in abstaining in voting rights case and reversing and remanding for decision on the merits).

The Secretary's failure to explain why this voting rights case should constitute the exception to the rule is reason enough for the Court to reject his invitation to abstain. For reasons that will be discussed, a decision to do so would almost certainly bar Plaintiffs from any possibility of relief to redress the irreparable harm that follows from the Secretary's construction of the Statute in advance of the August primary and November general elections. Indeed, abstention would likely delay any hope Plaintiffs have for relief for much longer than that. Thus, nothing about the circumstances make abstention any more appropriate here than it normally is when injury to the most fundamental of rights is at issue.

### 2. The Secretary Fails to Satisfy Other Key Requirements for *Pullman* Abstention

Even if it were not the long-standing rule in the Eleventh Circuit that abstention in voting rights cases is rarely appropriate, abstention in this case would still be improper, because the Secretary fails to satisfy other elements of the test that courts must apply in this Circuit when determining whether to abstain under the *Pullman* doctrine. *Pullman* abstention is "a narrow, judicially created exception

to the general grant of federal jurisdiction found in article III of the Constitution," *BT Inv. Managers, Inc. v. Lewis*, 559 F.2d 950, 953-54 (5th Cir. 1977), and is an entirely discretionary doctrine. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 727-28 (1996) ("[T]he power to dismiss under the *Burford* doctrine, as with other abstention doctrines, . . . derives from the discretion historically enjoyed by courts of equity."); *Baggett v. Bullitt*, 377 U.S. 360, 375 (1964) ("The abstention doctrine is not an automatic rule . . . ; it rather involves a discretionary exercise . . . ."). Its highly discretionary nature has led to significant differences in application among the Circuits. *See, e.g.*, James Bedell, *Clearing the Judicial Fog: Codifying Abstention*, 68 Case W. Res. L. Rev. 943, 961 (2018) ("The uncertainty surrounding abstention has created circuit splits with regard to *Pullman* and its requirements."); Rex E. Lee & Richard G. Wilkins, *An Analysis of Supplemental Jurisdiction and Abstention with Recommendations for Legislative Action*, 1990 B.Y.U. L. Rev. 321, 340 (1990) ("[T]he lower courts disagree on the circumstances where [*Pullman*] abstention is appropriately ordered."). It is thus not surprising that there are significant differences between the approach of the Eleventh Circuit (which clearly governs the application of the doctrine in this action) and, for example, the Third Circuit, the jurisdiction in which the primary case upon which the Secretary relies, *de la Fuente v. Cortes*, 207 F. Supp. 3d 441 (M.D. Pa. 2016), was decided.

The relevant Eleventh Circuit *Pullman* test considers a host of factors. In addition to this Circuit's long-standing requirement that a court consider the importance of the right allegedly impaired in considering whether to abstain, which was reiterated in *Siegel*, 234 F.3d at 1174, the long-standing rule is that, for *Pullman* abstention to even properly be considered in this Circuit, two baseline factors must be present: "(1) an unsettled question of state law and (2) that the question be dispositive of the case and would avoid, or substantially modify, the constitutional question." *Duke v. James*, 713 F.2d 1506, 1510 (11th Cir. 1983). If a court concludes that both are present, it must then "exercise discretion in deciding whether to abstain" by looking to "[a] number of factors," some arguing for abstention and others against. *Id.* In addition to the nature of the right sought to be vindicated, factors that counsel *against* abstention include delay, cost, doubt as to the adequacy of state procedures for having the state law question resolved, the existence of factual disputes, and the fact that the case has already been in litigation for a long time. *Id.* Those arguing *for* abstention are the availability of "easy and ample means" for determining the state law question, the existence of a pending state court action that may resolve the issue, or the availability of a certification procedure. *Id*. The Secretary addresses hardly any of these considerations, but a proper application of the Eleventh Circuit's test makes clear that abstention is not appropriate in this case.

### a.      This Case Does Not Involve An Unsettled Issue of State Law

The Secretary has not and cannot satisfy the baseline requirement that there must be an "unsettled question of state law" to trigger the Court's proper consideration of abstention. In the Eleventh Circuit, a question of state law may only be "unsettled" in one of three ways: (1) the statute itself is ambiguous; (2) some discrete parts of the statute are unconstitutional, but there is an open question whether these parts can be severed from the remainder of the statute without destroying its coherence; or (3) it is not clear whether the statute is invalid under other state law. *Strang v. Satz*, 866 F. Supp. 542, 544 (S.D. Fla. 1994).

Thus, it is not the case, as the Secretary appears to imply, that whenever a party "suggests" that a statute could potentially be constructed to avoid a constitutional decision, abstention is available, much less appropriate. *See, e.g.*, *Edwards*, 437 F.2d at 1243 ("It may appear . . . that where the issue of state law could clearly moot the constitutional question by construction of the state statutes involved without resort to any federal constitutional construction, applying the doctrine of abstention would be the proper course of action. This, however, is an oversimplification of the doctrine."). Indeed, if this were the case, the canon of constitutional avoidance would become a kind of reverse removal doctrine, available whenever a state defendant seeking to avoid scrutiny by the federal courts (or to delay adjudication of a plaintiffs' constitutional claims) could fashion

some colorable statutory construction argument that might ultimately avoid the need for a court to rule on a constitutional question. That is clearly not the law in the Eleventh Circuit, and the Court should decline the Secretary's invitation to stretch the *Pullman* doctrine far beyond its appropriate reach here.

Indeed, in this case, the Secretary only attempts to argue that the Statute is "unsettled" because it is ambiguous, Mot. at 13-14, but that argument cannot withstand even the most cursory scrutiny. Specifically, the Secretary doubles down on his interpretation of the Statute as expressed in the Opinion that gave rise to this lawsuit: that the Statute, which explicitly permits the use of "*any* . . . permanent public library facility, fairground, civic center, courthouse, county commission building, stadium, convention center, government-owned senior center, or government-owned community center as [an] early voting site[]," Fla. Stat. § 101.657(1)(a) (emphasis added), in fact *prohibits* the use of any facilities "related" to, "designed for," "affiliated with," or "part of" a college or university for early voting, even if they otherwise qualify as one of the types of approved early voting sites listed in the statute. Mot. at 5-6; *see also* Dep't of Elections Advisory Op., ECF No. 24-1. The Secretary echoes the justification asserted in the Opinion, contending that the exception that the Secretary reads into the Statute is mandated by the Florida Legislature's failure to enact proposed legislation that would have *further* expanded the law to permit SOEs to use *any* facility associated with higher

educational institutions (i.e., not limited to libraries, community centers, stadiums, etc.) for early voting purposes. *See* Dep't of Elections Advisory Op. at 2 (ECF No. 24-1) (describing bill that would have permitted use of "*any* 'Florida College System institution facility, state university facility, or college facility'") (emphasis added); ECF No. 24-11 at 13, Fla. SB 388, 2013 Leg., Reg. Sess. (2013) (same); ECF No. 24-12 at 2, Fla. SB 82, 2013 Leg., Reg. Sess. (2013) ("any . . . community college facility, [or] university or college'"); ECF No. 24-13 at 2, Fla. SB 80, 2013 Leg., Reg. Sess. (2013) ("any . . . university or college"); ECF No. 24-4, Amend. 3 to HB7013, 2013 Leg. Reg. Sess. (2013) (proposed amendment that would have allowed use of any "Florida College System institution facility").

The Statute, however, is unambiguous, and the Secretary's attempt to justify his reading of it is unsupportable. As an initial matter, and as the Secretary himself notes, under Florida principles of statutory interpretation, "reliance on legislative history in appropriate *only* when the statutory text is unclear." Mot. at 14 (citing, as an example, cases such as *Holly v. Auld*, 450 So. 2d 217, 219 (Fla. 1984)) (emphasis added). Here, though, the statutory text could not be plainer: "[t]he supervisor may . . . designate *any* city hall, or permanent public library facility, fairground, civic center, courthouse, county commission building, stadium, convention center, government-owned senior center, or government-owned community center as early voting sites." Fla. Stat. § 101.657(1)(a) (emphasis

added). Determining that a facility such as a library, student union, or stadium owned by a *public* state university does not come within the ambit of these terms strains the English language beyond the plausible. Given the clear lack of ambiguity in the Statute's plain text, one of the baseline requirements for even considering *Pullman* abstention simply is not present. *See supra.*

Further, even the legislative history upon which the Secretary purports to rely does not support his interpretation. First, and as the Secretary himself repeatedly acknowledges in his Motion, the purpose of the Statute was to "[*e*]*xpand*[] currently authorized [early voting] sites." Fla. House of Representatives Final Bill Analysis, Bill No. CS/HB 7013 (May 21, 2013) (emphasis added); *see also* Mot. at 2, 4, 5. Moreover, all of the pieces of proposed legislation and the rejected amendment upon which the Secretary purports to rely would have done much more than affirm that the term "any" in the statute did in fact mean "any," and did not mean (as the Secretary now argues) "any . . . , *except* facilities associated with colleges or universities." Rather, the proposed legislation and amendment cited in the Opinion all would have further expanded the Statute to permit the use of virtually any facility on a college campus, without limitation, to include potentially mailrooms, or snack bars, or dining halls, or parking garages. Neither of the doctrines invoked in the singular case that the Secretary cites in his Motion can be contorted to support the Secretary's blatantly unsupportable reading

of the Statute. *See Schoeff v. R.J. Reynolds Tobacco Co.*, 232 So. 3d 294, 304 (Fla. 2017) (justifying narrow construction of statute based on unius est exclusion alterius canon and fact that the statute was a derogation of common law). Thus, because the Secretary fails to establish, under the test applied in the Eleventh Circuit, that there is, in fact, an unsettled question of State law, he cannot even meet the threshold requirements to support any further consideration of his abstention argument.[3]

### b.   Abstention Would Delay, Not Expedite, Resolution of Plaintiffs' Claims

Several additional factors also weigh against abstention in this matter. Most notably, courts universally recognize that abstention almost always results in substantial delays. Quite contrary to the Secretary's bald assertion that abstention would offer the "surest and quickest path to a definitive resolution of the Plaintiffs' concerns," Mot. at 12, to abstain would be to unnecessarily and prejudicially prolong Plaintiffs' attempt to remedy their constitutional injuries. Indeed, the fact that extended delay when a court abstains is nearly certain, is one of the reasons cited repeatedly by the authoritative cases in this Circuit that establish that abstention in voting cases is rarely appropriate. *See, e.g., Duncan*, 657 F.2d at 699

---

[3] Although a largely academic point, because it is not part of the Court's abstention analysis under the test applied in this Circuit, the Court, of course, may properly find both that the Secretary's interpretation is incompatible with Florida law and also that it is unconstitutional. *See, e.g*., *Weisberg v. Powell*, 417 F.2d 388, 391-92, 93-94 (7th Cir. 1969).

("The delay inherent in abstention is least tolerable where, as here, fundamental constitutional rights enjoyed by a broad class of citizens would be suspended while adjudication begins in state court."); *Edwards*, 437 F.2d at 1244 ("[T]he delay which follows from abstention is not to be countenanced in cases involving such a strong national interest as the right to vote.").

Of course, voting cases are not the only cases where abstention creates delay; it is a well-recognized and well-understood result of invoking the doctrine in just about any kind of case. *See, e.g.*, *Baggett*, 377 U.S. at 378-79 ("We also cannot ignore that abstention operates to require piecemeal adjudication in many courts . . . thereby delaying ultimate adjudication on the merits for an undue length of time.") (citing *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411 (1964) and *Government and Civic Emps. Org. Comm., CIO v. Windsor*, 353 U.S. 364 (1964)). But, as the Eleventh Circuit has noted, delay in voting cases in particular—and Plaintiffs submit, in this voting case, specifically, where Plaintiffs seek a preliminary injunction in advance of the upcoming August primary and November general elections—can itself cause irreparable injury. *See, e.g.*, *Duncan*, 657 F.2d at 699; *Edwards*, 437 F.2d at 1244; *see also Fla. Democratic Party v. Detzner*, No. 4:16cv607-MW/CAS, 2016 WL 6090943, at *8 (Oct. 16, 2016) ("[I]rreparable injury is presumed when '[a] restriction on the fundamental right to vote' is at issue." (quoting *Obama for Am.*, 697 F.3d at 436)). The Secretary

provides no reason to believe that this case would proceed any differently than a normal abstention case in which substantial delays are to be expected. Nor is there anything inherent about this case that would seem to make it so. To the contrary, there is no pending state court action that may resolve the issue (which itself is further reason, under the test applied in this Circuit, to decline to abstain, *see supra*).

Further, if the Secretary believes that a state court is likely to find that his Opinion is, in fact, *contrary to Florida law*—which is the inherent assumption that necessarily undergirds his argument, as only a state court ruling that the Secretary is *misapplying* Florida law as written could eliminate the need for this Court to eventually reach Plaintiffs' constitutional claims—the appropriate thing for him to do, as a state officer sworn to "support, protect, and defend the Constitution and Government of the United States and the State of Florida," Fla Const. art. II, § 5(b), is to voluntarily rescind his Opinion and make clear that there is not, in fact, any limitation under Florida law that prohibits SOEs from offering early voting in college- or university-affiliated facilities that otherwise qualify as authorized sites under the plain terms of the Statute.

If, by its repeated references to Plaintiffs' "perception" that the Opinion erects barriers to on-campus early voting, the Motion means to imply that, in the Secretary's view, Plaintiffs are under some misapprehension and there are *no*

restrictions on the SOEs' ability to offer early voting in college- or university-affiliated facilities, then it is illogical to request an order that would have the effect of ping-ponging the Plaintiffs back and forth between this Court and State court for an indefinite (but almost certainly lengthy) period of time, when the Secretary could resolve this issue today by issuing a clear directive to that effect. *See, e.g.*, Mot. at 12 (". . . . clear any actual *(or perceived)* barriers the Division's 2014 Advisory Opinion creates") (emphasis added); *id.* at 15-16 ("clear any barriers the Plaintiffs *think* the 2014 Advisory Opinion erects") (emphasis added).

## B.    Plaintiffs Have Standing to Pursue Their Claims

The Secretary's standing arguments fare no better than his assertions regarding abstention. First, the Secretary's argument that the entity Plaintiffs, the Florida League of Women Voters (the "League") and the Andrew Goodman Foundation ("AGF"), lack standing, is not only wrong, but irrelevant: it is well-settled that, in a litigation where multiple plaintiffs bring the same claims, it is enough if only one has standing, and the Secretary fails to (and could not plausibly) make an argument that none of the individual voters have Article III standing to maintain the same claims. But in any event, the Secretary's argument is incorrect as a matter of law: both organizations clearly have standing to pursue this case under well-settled precedent. Second, the Secretary is incorrect in arguing that Plaintiffs do not meet Article III's redressability prong. To the contrary, as both a

- 18 -

legal and factual matter, Plaintiffs' injuries are largely redressable by a favorable decision. The Secretary's arguments ignore the nature of Plaintiffs' requested relief, downplay the Secretary's clear and demonstrated authority as Florida's chief elections officer, and—if accepted—would chart a path for state actors to burden voting rights and yet avoid federal judicial scrutiny. This Court should reject the Secretary's standing arguments.

### 1.    The League, AGF, and the Individual Voter Plaintiffs Have Standing

The Secretary's argument that neither the League nor AGF have standing is both ultimately inconsequential and wrong as a matter of law. First, even if the Secretary were correct that the League and AGF lack standing (which he is not), dismissal of this action on those grounds would be inappropriate, where the Secretary does not argue (and it is not seriously disputable) that none of the individual Plaintiffs have standing to bring the claims alleged in the Complaint. *See Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017) ("[W]hen there are multiple plaintiffs [] [a]t least one plaintiff must have standing to seek each form of relief requested in the complaint.").

The Secretary does assert—without any further explanation or citation to any authority—that *one* of the individual Plaintiffs, Dillon Boatner "does not possess standing to sue in his own individual right," Mot. at 20 n.7, but this is plainly incorrect as a matter of law. In *Common Cause/Georgia v. Billings*, the

Eleventh Circuit made clear, in the voting rights context no less, that, "[f]or purposes of standing, a denial of equal treatment is an actual injury *even when the complainant is able to overcome the challenged barrier*." 554 F.3d 1340, 1351 (11th Cir. 2009) (emphasis added). *See also id.* ("'When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing.'") (quoting *Ne. Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville, Fla*., 508 U.S. 656, 666 (1993)). Thus, a voter need not have to show that they are unable to pay a poll tax in order to have injury sufficient under Article III to challenge it. *Id*. The injuries alleged by all of the individual Plaintiffs here are more than sufficient to satisfy Article III standing in this case, where they have alleged unequal treatment and burdens that they must overcome as a result to access early voting, as well as intentional discrimination that is meant to and has effectively burdened their voting rights. *See, e.g*., First Am. Compl. ¶¶ 17-22, 68-76, 79-98.[4]

---

[4] If the Secretary's assertion about Mr. Boatner in particular is based on the fact that Mr. Boatner, who does not yet know what his address will be at the time of the election, First Am. Compl. ¶ 20, is not currently an Alachua County voter, *see* Mot. at 7, this, too, does not strip Mr. Boatner of standing in this litigation. To the contrary, the Complaint affirmatively alleges that Mr. Boatner intends to change his registration to Alachua County and vote in Alachua County in the upcoming election. First Am. Compl. ¶ 20. This is enough to demonstrate an injury that is

Furthermore, and contrary to the Secretary's argument, both the League and AGF can identify at least one member who has been unconstitutionally burdened by the Secretary's unconstitutional construction of the early voting law; thus, both have associational standing. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000) ("An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."). For example, Plaintiff Megan Newsome is an Andrew Goodman Foundation Puffin Democracy Fellow, Decl. of David Goodman ¶ 16 (Goodman Decl.) (ECF No. 28), Plaintiff Jamie Roy is an Andrew Goodman Foundation Student Ambassador, *id.* ¶ 10, and Mr. Boatner is a League member, First Am. Compl. ¶ 20 (ECF No. 16).[5]

---

"real and immediate," and not "hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983). If it were not the case, then literally thousands of young voters, who often change housing on an annual basis (or more often), would not have standing to challenge laws that burden them as young voters, except for very short windows of time. The Secretary cites nothing that would support such a conclusion.

[5] Because the Secretary's allegations constitute a factual attack on Plaintiffs' standing, Plaintiffs are free to rely on documents outside of the pleadings. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.), *cert. denied*, 449 U.S. 953 (1980) (noting that factual attacks on standing challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered").

Moreover, the Secretary's argument ignores that associational standing (i.e., standing through an entity's members) is not the only means by which an entity may have standing: it may also assert an Article III injury sufficient to have standing in its *own* right, where a defendant's illegal acts impair the organization's ability to engage in its own projects by forcing the organization to divert resources in response. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) ("[C]oncrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests."). In effect, this theory of standing flows from the concept that an act or law which "negat[es] the efforts of an organization" provides an injury real and concrete enough to provide standing to the organization in its own right. *Fla. State Conf. of the NAACP v. Browning*, 522 F.3d 1153, 1166 (11th Cir. 2008). The Eleventh Circuit has repeatedly permitted standing under this theory in circumstances like those presented here. *See, e.g.*, *Arcia v. Fla. Sec. of State*, 772 F.3d 1335, 1341 (11th Cir. 2014); *Common Cause/Georgia v. Billings*, 554 F.3d at 1350; *Fla. State Conf. of the NAACP*, 522 F.3d at 1165-66. This provides yet another basis for finding that the League and AGF have standing, both of which have already diverted resources, and will have to continue diverting resources, from other efforts to combat the effects of the Secretary's Opinion, which has "negat[ed] the efforts of [both

organization[s]." *Fla. State Conf. of the NAACP*, 522 F.3d at 1166; *see also* First Am. Compl. ¶¶ 15, 16; Decl. of Patricia Brigham (Brigham Decl.) ¶¶ 12-14 (ECF No. 27); Goodman Decl. ¶ 18.

### 2.    Plaintiffs' Constitutional Injuries Are Sufficiently Redressable by a Favorable Ruling

The Secretary is similarly incorrect to argue that Plaintiffs' Complaint should be dismissed because it fails to satisfy Article III's redressability requirements. To this end, the Secretary makes two arguments, both of which are easily rejected.

First, the Secretary implies that Plaintiffs should have sued each of the 67 SOEs, arguing that, "even if the Plaintiffs succeed, the Secretary cannot simply direct" the SOEs "to select on-campus early voting sites to ease the adverse effects that Plaintiffs allege." Mot. at 17-18. As an initial matter, this misconstrues the relief that Plaintiffs seek. Plaintiffs do not seek an order requiring the SOEs to exercise their discretion in any particular way; they request that the Secretary be required to unbind their hands and *restore* to the SOEs their discretion to place early voting sites in "any" of the Statute's approved facilities, so that they can comply with their mandate that they make early voting equally accessible to all voters insofar as is practicable. Fla. Stat. § 101.657(1)(a). It is disingenuous for the Secretary to suggest that the SOEs are currently free to offer early voting in college- or university-affiliated facilities, or that an order from this Court finding

the Secretary's Opinion, which *explicitly states that SOEs may not do so*, unconstitutional, would not redress Plaintiffs' injuries sufficiently to satisfy Article III's standing requirements.

Further, and as this Court previously recognized when it rejected a similar argument made by the Secretary in a different case, the Secretary is the State's chief elections officer, vested with power to obtain and maintain uniformity in the interpretation and implementation of Florida's election laws, including by initiating enforcement actions against SOEs. Fla. Stat. §§ 97.012(1), (16); *Fla. Democratic Party*, 2016 WL 6090943, at *4-5. Indeed, the Secretary stops short of asserting that the SOEs do, in fact, remain free to offer early voting on campus, an easy enough thing to assert, if true. Instead, the Secretary insinuates that some SOEs may be bound and some not, Mot. at 6, but this innuendo only serves to underscore that the Plaintiffs' injuries here are both traceable to and *only* redressable by relief that Plaintiffs seek *from the Secretary* in this litigation.[6]

---

[6] The Secretary repeatedly, indirectly, and incorrectly appears to make an argument that Plaintiffs' harm is not fairly traceable to his conduct by arguing that the Opinion is solely binding on Alachua County, highlighting the "perceived" barriers his Opinion enacts and its "limited reach." Mot. at 12, 15. These assertions, however, ignore the Secretary's responsibility to "[o]btain and maintain uniformity in the interpretation and implementation of the election laws," Fla. Stat. § 97.012(1), a responsibility the Secretary can carry out by "[b]ring[ing] and maintain[ing] such actions at law or in equity by mandamus or injunction to enforce the performance of any duties of a county supervisor of elections or any official performing duties with respect to [Florida election law]." *Id.* at §§ 97.012(14), (16); *see also* First Am. Compl. ¶ 23. They also ignore the practical

It is undisputed that the Secretary's Opinion prohibits early voting at the University of Florida's campus in Gainesville. Dep't of Elections Advisory Op. at 2 (ECF No. 24-1); Mot. at 6. And for the same reasons that the Opinion, although nominally directed toward interested parties in Gainesville, has had the effect of barring early voting on campuses across Florida, a remedy that finds that Opinion unconstitutional would have the result of restoring discretion to SOEs across the State. *See, e.g.*, Decl. of Ion Sancho (Sancho Decl.) ¶¶ 14-16 (explaining SOEs do not act contrary to the Secretary's directions in advisory opinions, no matter to whom they are nominally directed) (ECF No. 33). On the flip side, unless the *Secretary's* Opinion is invalidated, the SOEs will not act contrary to it. *See id.*; *see also Fla Democratic Party v. Detzner*, 2016 WL 6090943, at *5 ("Defendant Detzner … argu[es] that … he does not possess the power to issue orders directing compliance with Florida's election laws . . . . But that is simply not the case.").[7]

---

effects that the Opinion has had on all of the State's SOEs and the similar impact that Plaintiffs' requested relief would have. *See* discussion *infra*.

[7] This fact is both obvious and intuitive: Florida SOEs are not going to contradict the opinion of Florida's chief elections officer on matters of election law. If the Secretary truly believes his Opinion to be limited to the sole factual circumstance presented in Gainesville, Mr. Sancho's declaration provides an obvious remedy: the Secretary can issue an opinion stating as much, freeing other officials to place early voting sites on college campuses outside of Gainesville. The Secretary has not and will not do so, however, because he wants to have it both ways: confident that no SOE will go against his interpretation, while still maintaining the deniability of his interpretation's limited reach when actions such as this lawsuit arise. This Court should not permit the Secretary to evade scrutiny of his interpretation by maintaining this charade.

Indeed, even if the Secretary's interpretation were limited to Gainesville, five of the six individual Plaintiffs (Megan Newsome, Amol Jethwani, Jamie Roy, Dillon Boatner, and Anja Rmus) seek to vote in Gainesville in the 2018 election. First Am. Compl. ¶¶ 17-20, 21. Further, the League has 42 student members in Alachua County, Bringham Decl. ¶ 7, and AGF has student ambassadors on the University of Florida campus. Goodman Decl. ¶ 10. This is to say nothing of the fact that, even if limited to Gainesville, the Secretary's interpretation would still hamper the missions of both the League and AGF and cause them to divert resources to combat it, an injury sufficient to confer standing, which the Secretary's motion to dismiss overlooks. *See infra.*

Second, the Secretary's argument that Plaintiffs lack standing because the relief they seek would not guarantee that early voting sites are placed on campuses is incorrect as a matter of law.[8] The Sixth Circuit rejected a nearly identical argument in a case that also concerned unequal access to early voting, where the injunction granted to the plaintiffs left the ultimate decision of whether to offer early voting to the discretion of the local boards of elections. *See Obama for Am.*, 697 F.3d at 437 ("[T]he State is not affirmatively required to order the boards to be open for early voting . . ."). This conclusion is consistent with decisions of other

---

[8] It is also likely incorrect as a matter of fact. *See* PI Mot. at 9-10 (describing actions taken by Alachua County and Gainesville to support offering early voting on campus at the University of Florida, including by resolving to favorably consider funding requests for such a site in 2018 if this litigation is successful).

courts, which have similarly found that, where, as here, it is the defendant's policies that force a third party to treat the plaintiffs in a way that causes them injury, irreparable harm—a *higher bar* than Article III redressability—is met, even if the result may not be total remediation of the plaintiffs' injuries. *See, e.g., Doe v. Miller*, 573 F. Supp. 461, 468 (N.D. Ill. 1983). This is because Plaintiffs in this situation suffer an injury—indeed, an irreparable one—by having SOEs' decision-making constrained by unconstitutional considerations. *Id.* And, absent the relief requested by Plaintiffs, the Secretary's Opinion will continue to constrain the discretion of SOEs in a way that constitutionally injures Plaintiffs.

Further, were this Court to accept the Secretary's argument, it would provide a roadmap for state actors to violate the rights guaranteed to citizens by the federal Constitution with impunity. In a nutshell, the Secretary argues that the State's chief elections officer can make broad pronouncements on the interpretation of state elections law that have the practical effect of impinging on citizens' federal constitutional rights, but then skirt enforcement of those rights by arguing that any injuries are not traceable to his conduct because not all of the SOEs are necessarily affirmatively bound by his pronouncements. However, there can be little doubt of the practical effect of such pronouncements. *See, e.g.*, ROBERT DODSLEY, THE CHRONICLE OF THE KINGS OF ENGLAND, FROM WILLIAM THE NORMAN TO THE DEATH OF GEORGE III (1821) at 27 ("[W]ho shall deliver me from this turbulent

priest?"). If the Secretary's argument were correct, then the vagaries of state law would essentially prevent the enforcement of federal constitutional rights by federal courts. This cannot be, and indeed is not, the law. *Cf. Robertson v. Wegmann*, 436 U.S. 584, 602 (1978) ("Litigants identically aggrieved in their federal civil rights, residing in geographically adjacent States, will not have different results due to the vagaries of state law.").

Finally, the Secretary's argument focuses only on Plaintiffs' Equal Protection claims, ignoring their Twenty-Sixth Amendment intentional discrimination claim. But a decision invalidating the Secretary's construction of the Statute as intentionally discriminatory would, in its own right, remedy at least some of the injury that Plaintiffs have suffered as a result. *See Obama for Am.*, 697 F.3d at 437; *Doe*, 573 F. Supp. at 468.

## C.   Plaintiffs Have Alleged Legally Cognizable Claims

Finally, the Court can easily reject the Secretary's argument that Plaintiffs have failed to state a claim under which relief may be granted. The Secretary bases this argument on the fact that Plaintiffs do not allege that the Secretary's Opinion has actually *prevented* them from voting, Mot. at 19, but it is well established that this is not the relevant legal standard.

The *Anderson-Burdick* standard, which the Secretary agrees applies here, *see id.*, does not require the denial of the right to vote for a state election law or

interpretation of a law to be unconstitutional. It instead requires the Court to "weigh 'the character and magnitude of the asserted injury to the rights … that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)). Under this sliding standard, burdens falling short of a complete denial of the right to vote have not merely been found sufficient to state a claim, but sufficiently burdensome as to be unconstitutional. *See, e.g.*, *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 666 (1966) (finding $1.50 poll tax violative of Equal Protection Clause); *Obama for Am.*, 697 F.3d at 425; *Common Cause Indiana v. Marion Cty. Election Bd.*, 2018 WL 1940300, No. 1:17–cv–01388–SEB–TAB, at *21 (S.D. Ind. Apr. 25, 2018) (granting preliminary injunction requiring county election board to establish satellite early voting locations in Marion county for November 2018 general election).

There can be no serious argument that Plaintiffs have not sufficiently alleged a burden on their right to vote to maintain their equal protection claims, *see* First Am. Compl. ¶¶ 15-22. It is well established that Plaintiffs need not allege a complete "denial" of their right to vote to allege that the right is "burdened." *See, e.g., Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 191 (2008) ("However

slight" the burden on the right to vote "may appear," "it must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'") (quoting *Norman v. Reed*, 502 U.S. 279, 288-89 (1992)); *see also Burdick*, 504 U.S. at 439 (applying *Anderson-Burdick* balancing test analysis despite "limited burden" imposed on voters' rights by Hawaii's prohibition on write-in voting); *Obama for America*, 697 F.3d at 429-430 (applying *Anderson-Burdick* to consider burden imposed by the removal of three days of early voting). If anything, the Secretary's argument goes to the question of which standard of scrutiny the Court should apply to evaluate Plaintiffs' claims. *See Burdick*, 504 U.S. at 434 ("[T]he rigorousness of [the court's] inquiry into the propriety of a state election law depends upon the extent to which [the challenged law] burdens [voting rights].")."). But that is an argument more appropriately made in the Secretary's opposition to the motion for a preliminary injunction; it provides no basis for dismissing Plaintiffs' claims.[9]

---

[9] The cases which the Secretary relies upon do not actually support his argument that Plaintiffs have failed to allege a cognizable injury. Mot. at 21. For instance, the Secretary cites *McDonald v. Bd. of Election Comm'rs*, 394 U.S. 802 (1969), a pre-*Anderson-Burdick* case where the Supreme Court applied a rational basis standard to evaluate claims from unsentenced Illinois inmates that were denied access to absentee ballots. *Id.* at 803. But in *McDonald*, the court evaluated plaintiffs' claims and granted summary judgment, 394 U.S. at 860; it did not dismiss for failure to state a claim. Similarly, *Arizona Libertarian Party v. Reagan*, 798 F.3d 723 (9th Cir. 2015), provides no basis for dismissing Plaintiffs' claims on the facts here. To the contrary, both of these cases actually demonstrate that even exceedingly slight burdens on the right to vote (1) state a claim under the First and

Further, the Secretary's argument on this front focuses entirely on Plaintiffs' equal protection claims, again ignoring that Plaintiffs also allege violation of the Twenty-Sixth Amendment. That Amendment expressly prohibits "deni[al] *or* abridge[ment]" of the right to vote "on account of age." U.S. Const. amend. XXVI, § 1 (emphasis added); *see also* PI Mot. at 29-33 (discussing Twenty-Sixth Amendment claim). Thus, with regard to this claim, too, the Secretary's assertion that Plaintiffs may only maintain this action based on allegations of total disenfranchisement cannot be sustained as a matter of law.

## III.   CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court deny Defendant's motion to abstain, or in the alternative to dismiss.

## LOCAL RULE 7.1(F) CERTIFICATION

Counsel for Plaintiffs, Frederick S. Wermuth, Esquire, certifies that this memorandum contains 7,015 words.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 29, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

---

Fourteenth Amendments and (2) must be "rationally related to a legitimate state interest," *Az. Libertarian Party*, 798 F.3d at 732, to survive constitutional scrutiny, a bar the Secretary's tortured reading of the Statute here cannot clear, for the reasons discussed in the motion for preliminary injunction. *See* PI Mot. at 26-29.

Dated:  June 29, 2018                          By: /s/ Frederick S. Wermuth
                                               Frederick S. Wermuth
                                               Florida Bar No.: 0184111
                                               KING, BLACKWELL, ZEHNDER
                                                    & WERMUTH, P.A.
                                               P.O. Box 1631
                                               Orlando, FL 32802-1631
                                               Telephone: (407) 422-2472
                                               Facsimile: (407) 648-0161
                                               fwermuth@kbzwlaw.com

                                               Marc E. Elias
                                               Elisabeth C. Frost*
                                               Amanda Callais*
                                               Jacki L. Anderson*
                                               John M. Geise*
                                               Alexi M. Velez*
                                               PERKINS COIE LLP
                                               700 Thirteenth St., N.W., Suite 600
                                               Washington, D.C. 20005-3960
                                               Telephone: (202) 654-6200
                                               Facsimile: (202) 654-9959
                                               melias@perkinscoie.com
                                               efrost@perkinscoie.com
                                               acallais@perkinscoie.com
                                               jackianderson@perkinscoie.com
                                               jgeise@perkinscoie.com
                                               avelez@perkinscoie.com

                                               *Counsel for the Plaintiffs*
                                                *Admitted Pro Hac Vice*