UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF FLORIDA, INC., THE ANDREW GOODMAN FOUNDATION, INC., MEGAN NEWSOME, AMOL JETHWANI, MARY ROY a/k/a JAMIE ROY, DILLON BOATNER, ALEXANDER ADAMS, and ANJA RMUS,<br><br>    Plaintiffs,<br><br>        v.<br><br>KENNETH W. DETZNER, in his official capacity as the Florida Secretary of State,<br><br>    Defendant. | Case No. 4:18-cv-00251 (MW/CAS) |

**PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. ii

I.     INTRODUCTION ...........................................................................................1

II.    ARGUMENT...................................................................................................1

       A.    The Secretary's "Federalism" Arguments Are Without Merit ...............1

       B.    Plaintiffs Are Likely To Succeed On the Merits.....................................4

       C.    Plaintiffs Will Suffer Irreparable Harm ...................................................9

       D.    The Balance of the Equities and Public Interest Favor Relief..............10

III.   CONCLUSION.............................................................................................13

# **TABLE OF AUTHORITIES**

*Anderson v. Celebrezze*,
  460 U.S. 780 (1983)......................................................................................6

*Benisek v. Lamone*,
  138 S. Ct. 1942 (2018)................................................................................12

*Bush v. Gore*,
  531 U.S. 98 (2000)........................................................................................8

*Common Cause Indiana v. Marion Cty. Election Bd.*,
  F. Supp 3d, 2018 WL 1940300 (S.D. Ind. Apr. 25, 2018) ...........................5, 6, 8

*Conservative Party of N.Y. State v. N.Y. State Bd. of Elections*,
  No. 10-CV-6923 (JSR), 2010 WL 4455867 (S.D.N.Y. Oct. 15, 2010) .............12

*Crookston v. Johnston*,
  841 F. 3d 396, 397-99 (6th Cir. 2016) ..............................................................12

*Fla. Democratic Party v. Detzner*,
  No. 4:16CV607-MW/CAS, 2016 WL 6090943 (N.D. Fla. Oct. 16, 2016) .........7

*Hand v. Scott*,
  888 F.3d 1206 (11th Cir. 2018) .........................................................................2

*N.C. State Conference of the NAACP v. McCrory*,
  831 F.3d 204 (4th Cir. 2016).............................................................................4

*Ne. Fla. Chapter. of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*,
  896 F.2d 1283 (11th Cir. 1990) .......................................................................12

*Ne. Ohio Coal. For Homeless v. Husted*,
  696 F.3d 580 (6th Cir. 2012) ............................................................................6

*Obama for Am. v. Husted ("OFA")*,
  697 F.3d 423 (6th Cir. 2012) .......................................................................5, 8

*One Wisconsin Inst., Inc. v. Thomsen*,
  198 F. Supp. 3d 896 (W.D. Wis. 2016) ............................................................8

*Pennhurst State School & Hospital v. Halderman*,
    465 U.S. 89 (1984) ............................................................................................... 1

*Silberberg v. Bd. of Elections of the State of N.Y.*,
    216 F. Supp. 3d 411 (S.D.N.Y. 2016) ............................................................. 12

*Veasey v. Abbott*,
    830 F.3d 216 (5th Cir. 2016) ............................................................................. 3

## Statutes and Other Authority

Fla. Stat. § 101.657 ....................................................................................... 1, 11

Fla. Stat. § 106.23 ................................................................................................ 4

# I. INTRODUCTION

In response ("Resp.") (ECF No. 45) to Plaintiffs' Motion for Preliminary Injunction (the "Motion") (ECF No. 36), the Secretary mischaracterizes Plaintiffs' claims, leaves relevant facts plausibly (and, often, entirely) unrebutted, and misconstrues the law. On this record, the requested injunction is clearly appropriate, and Plaintiffs respectfully request that the Court grant the Motion as soon as possible, to make clear that Supervisors of Elections ("SOEs") may offer on-campus early voting ("EV") in upcoming elections.

# II. ARGUMENT

## A. The Secretary's "Federalism" Arguments Are Without Merit

The Secretary mischaracterizes Plaintiffs' claims and the relief sought, again attempting to convince the Court to decline to hear Plaintiffs' exclusively federal claims, and force Plaintiffs to seek a state court opinion as to whether the ban on on-campus EV is contrary to Fla. Stat. § 101.657(1)(a) (the "Statute"), which the Secretary claims compels the ban. *See* Resp. at 4-6. This argument has no merit. *See* Pls.' Opp. to Mot. to Dismiss at 5-18 (ECF No. 42) ("Pls.' Opp."). Nor is there merit to the insinuation that *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 106 (1984), prohibits the requested injunction.

Plaintiffs neither allege state law claims, nor seek an order "compel[ling] state officials to follow a federal court's interpretation of state law." Resp. at 4.

Plaintiffs allege that the on-campus EV ban violates the U.S. Constitution's First, Fourteenth, and Twenty-Sixth Amendments, First Am. Compl. ¶¶ 79-98 (ECF No. 16), and seek an injunction to protect Plaintiffs (and hundreds of thousands of Florida voters in college communities) from the irreparable injury resulting from the Secretary's *unconstitutional* statutory interpretation, which SOEs have obeyed, consistent with their practice and routine deference to Florida's chief election officer, *id*. at 47, 51; Pls.' Mot. for Prelim. Inj. at 2 (ECF No. 22); Declaration of Ion Sancho ("Sancho Decl.") (ECF No. 33) ¶¶ 15-16; *see also* Supplemental Declaration of Ion Sancho ("Supp. Sancho Decl.") ¶¶ 3-6.[1]

That the Secretary's on-campus EV ban *also* conflicts with State law does not insulate his federal constitutional transgressions from this Court's review. Nor is there any doctrine that requires this Court to ignore constitutional violations because a defendant claims to follow state law. Indeed, given the extensive delays when a court abstains, to hold otherwise would provide a roadmap to avoid federal judicial review indefinitely. Pls.' Opp. at 15-18.

This is not to say it is irrelevant that the on-campus EV ban is contrary to the Statute. Far from it. The Secretary's promulgation (and refusal to clarify) a "formal opinion" (the "Opinion") posted online and distributed to all SOEs, expressly

---

[1] The Secretary's reliance on *Hand v. Scott*, 888 F.3d 1206 (11th Cir. 2018), is also misplaced, as it concerns a unique body of felon re-enfranchisement precedent that is not transferrable to other voting challenges. *See id*. at 1208-09. Moreover, Plaintiffs do not seek an order directing the Secretary to comply with Florida law.

2

communicating that EV may not be offered in facilities "related" to, "designed" for, "affiliated with," or "part of" a college or university, Opinion at 2 (ECF No. 24-1); *see also* Supp. Sancho Decl. ¶¶ 4-6, is highly relevant to Plaintiffs' First and Fourteenth Amendment claims. Indeed, the *only* justification offered for broadly prohibiting on-campus EV is the Opinion's assertion that it is *required* by the Legislature's failure to adopt expansive proposals to permit EV at *any* college- or university-affiliated facility. *See* Opinion at 2; Mot. to Dismiss at 13-14 (ECF No. 20).[2] The fact that the Statute, on its face, does not support the Secretary's carve out for "college- or university-related facilities," Opinion at 2, makes it highly unlikely that the Secretary could show that "relevant and legitimate state interests" are "sufficiently weighty to justify the limitation" that it imposes on Plaintiffs' fundamental rights, as the Secretary must to maintain the Opinion under the applicable standard. *See* Motion at 14-15, 26-29 (discussing and applying *Anderson-Burdick*).

It is also strong evidence that the Secretary's claim that state law requires the ban is pretextual, and that its actual purpose is to make it harder for Florida's youngest voters to access EV. Thus, it is also highly relevant to Plaintiffs' Twenty-Sixth Amendment claim. *Cf. Veasey v. Abbott*, 830 F.3d 216, 236-239 (5th Cir.

---

[2] Plaintiffs cite the Motion to Dismiss because the Response fails to identify *any* state interest justifying the on-campus EV ban. It also does not attempt to counter Plaintiffs' argument that the Opinion's justification does not support it. *See* Motion at 8-9, 26-29.

3

2016) (highlighting evidence that Texas's race-neutral justification for voter identification law was pretextual); *N.C. State Conference of the NAACP v. McCrory*, 831 F.3d 204, 238 (4th Cir. 2016) (finding reasons offered by state pretext for intentional discrimination).

**B.   Plaintiffs Are Likely To Succeed On the Merits**

*First*, the insinuation that this action is unsustainable, because the Opinion was promulgated under a provision empowering the Secretary to issue "advisory" opinions expressly "binding" the requester, *see* Resp. at 7 (citing Fla. Stat. § 106.23(2)), is not well-founded.[3] The Secretary does not deny that he has the power to bring legal actions to ensure SOEs uniformly apply election law, or assert that, if an SOE offered EV on campus, he would not exercise this authority. *See*

---

[3] This continues a trend of obfuscation by the Secretary, in which he implies but stops short of expressly stating that SOEs may offer on-campus EV. *See* Mot. to Dismiss at 12, 15-16. The Court should reject this attempt to effectively deny Plaintiffs relief while maintaining the on-campus EV ban. As discussed, if the Secretary believes the Opinion only binds the Gainesville City Attorney and does not otherwise prohibit EV at the University of Florida ("UF"), *see* Resp. at 7, the Secretary should formally clarify his position. *See* Pls.' Opp. at 17-18, 24 n.6, 25 n.7. That the Secretary has refused to do so (even after it became clear the Opinion was understood as a blanket prohibition of on-campus EV, *see* Mot. at 8-10, 32), speaks volumes. Furthermore, the Secretary's assertion that the Opinion only "regard[s] one voting location," Resp. at 7, is not a credible characterization of that directive, which states: "The Reitz Union is a structure designed for, and affiliated with, a specific educational institution. It is a part of [UF]. The terms 'convention center' and 'government-owned community center' cannot be construed so broadly as to include the Reitz Union *or any other college- or university-related facilities that were rejected by the Legislature as additional early voting sites*." Opinion at 2 (emphasis added).

Motion at 3 n.2 (citations omitted). He does not dispute the testimony from Ion Sancho, Leon County's longtime SOE, that SOEs "treat written opinions of the Division, including" the Opinion, "as authoritative and follow such opinions." Sancho Decl. at ¶¶ 15-16. He does not dispute that SOEs have not offered on-campus EV because of the Opinion, or that this was its practical and intended effect. *See id*. at ¶¶ 15-16; *see also* Supp. Sancho Decl. ¶¶ 3-6; *cf*. Declaration of Maria Matthews ¶ 8 (ECF No. 43-6) ("A review of the [EV] locations selected in Alachua County and Leon County for the 2016 election cycle, show that Supervisors designed [EV] sites *near* instead of on university campuses"). Nor does the Secretary cite any authority to support the contention that an official may insulate unconstitutional actions from judicial review because he expressed them in an "advisory opinion" that, in practice, every lower official follows.

*Second*, the Secretary fails to address the argument that the differential treatment of voters living in college communities is itself constitutionally problematic. The Secretary appears to take the position that differential treatment does not matter because Plaintiffs have not been completely disenfranchised. *See* Resp. at 8-13. But equal protection does not require voters be disenfranchised to state a claim, including in the EV context; it is enough that their access is limited as compared to other voters. *See, e.g., Obama for Am. v. Husted ("OFA")*, 697 F.3d 423, 425 (6th Cir. 2012); *Common Cause Indiana v. Marion Cty. Election*

5

*Bd.*, -- F. Supp. 3d --, 2018 WL 1940300 at *21 (S.D. Ind. Apr. 25, 2018)[4]; *see also* Pls.' Opp. at 29-30.

*Third*, the attempts to minimize the burdens that the Opinion imposes are not well-founded. The Secretary's claim that few voters will be impacted, based on how many UF and Florida State University ("FSU") students are "from" Alachua and Leon Counties, for example, Resp. at 13, is illogical. Where a student is originally "from" has nothing to do with their eligibility to vote where they live. *See* Supplemental Declaration of Elisabeth Frost ("Supp. Frost Decl."), Ex. 1 at 2; Ex. 2 at 7; Supp. Sancho Decl. ¶¶ 7-9; Supplemental Declaration of Megan Newsome ("Supp. Newsome Decl.") ¶ 3. Further, if a student is registered elsewhere in the County, they may update their residence for voting purposes up to and including on the day they vote, whether during EV or on Election Day; the same is true for students registered elsewhere in Florida if their new county uses electronic poll-books (which both Alachua and Leon County do). *See* Fla. Stat. § 101.045(2)(a); Frost Decl. Ex. 2 at 9, Ex. 3 at 11-12; Supp. Sancho Decl. ¶9; Declaration of Kim A. Barton ¶¶ 3-4. Moreover, even burdens that fall on small subsets of voters may be unconstitutional. *See, e.g.*, *Anderson*, 460 U.S. at 784-86; *Ne. Ohio Coal. For Homeless v. Husted*, 696 F.3d 580, 593 (6th Cir. 2012) (law likely unconstitutional even though only 0.248% of total ballots cast impacted);

---

[4] Although both *OFA* and *Common Cause Indiana* were discussed at length in Plaintiffs' Motion, the Response does not mention them.

*Fla. Democratic Party v. Detzner*, No. 4:16CV607-MW/CAS, 2016 WL 6090943, at *6 (N.D. Fla. Oct. 16, 2016) (invalidating system that impacted thousands in election with millions of ballots cast).

The Secretary's attempts to minimize travel burdens from UF or FSU illogically assumes that a student begins their trek from the *corner of campus closest to the EV site at issue*, *see* Resp. at 10-12, ignoring the significant footprints of these campuses. *See* Rodden Rpt. (ECF No. 24-9) at 11; *see also* Supplemental Declaration of Jamie Roy ("Supp. Roy Decl.") ¶¶ 7-8 (explaining flaws in Secretary's travel calculations); Supp. Sancho Decl. ¶¶ 10-11 (same). As for the burdens imposed on students at any *other* college or university, the Response says nothing. Instead, the Secretary broadly critiques Dr. Rodden's comprehensive analysis of disparities in travel times for student voters as compared to other voters in the same communities, but it is the Secretary's critique, not Dr. Rodden's analysis that is "flawed." Resp. at 18. For example, contrary to the Secretary's assertions, Dr. Rodden did account for students not living in dorms, had extensive automobile data to support his findings, and, unlike the Secretary, Resp. at 10-12, accounted for varying travel times, depending upon a student's starting location. Rodden Reply Rpt. at 2-9.

The Secretary is also wrong to assert that Plaintiff Roy (whose declaration is otherwise not disputed) would "likely . . . face the same travel time" if there were

7

EV at Reitz Union. Resp. at 22. First, Roy's travel time would be at least 40 minutes shorter. Supp. Roy Decl. ¶ 4. Further, Roy, like many UF students, travels to and through the Union *every day*; thus, they would not have to incur *any* additional travel if EV were offered there. *Id*. ¶¶ 5-6, 9-10.[5]

As expected, the Secretary attempts to dismiss the burdens resulting from the EV ban as inconsequential, asserting that students may vote-by-mail or on Election Day, and they have the same amount of time (if not the same ease of access) to travel to their nearest EV site, *see* Resp. at 12, but these arguments ignore that, while Florida had no obligation to offer EV, having done so, it "may not, by later arbitrary and disparate treatment, value one person's vote over that of another," including by establishing unequal EV access. *OFA*, 697 F.3d at 428 (quoting *Bush v. Gore*, 531 U.S. 98, 104-05 (2000)); *Common Cause Indiana*, 2018 WL 1940300, at *11 ("Once a unit of government has decided to administer a benefit or impose a burden, it must do so rationally and equitably, without offense to independent constitutional prohibitions."); *One Wisconsin Inst., Inc. v. Thomsen*, 198 F. Supp. 3d 896, 933 (W.D. Wis. 2016) ("[P]laintiffs contend [and the Court agrees] that by choosing to give its citizens the privilege of in-person absentee voting, the state must administer that privilege evenhandedly."). Moreover, even if the burdens on Plaintiffs were "minimal," the Response does not even attempt to

---

[5] The Secretary says nothing about the burdens asserted by Plaintiffs Newsome, Jethwani, Boatner, or Rmus, leaving their declarations entirely unrebutted.

articulate a legitimate state interest, either in limiting access to EV *solely* for voters in college and university communities, or in requiring that they surmount the hurdles described to vote. Thus, even under rational basis, the Opinion should be invalidated.

*Finally*, the Secretary ignores Plaintiffs' Twenty-Sixth Amendment claim, but the brand-new assertion that any SOE may use its "wildcard" site to offer EV on campus, *see* Resp. at 13-14, underscores that the Secretary has attempted to sow confusion and avoid clarifying the Opinion since its release. If UF could offer EV at Reitz Union using the "wildcard", there is no logical reason (except a discriminatory one) for not saying so in the Opinion, or at the latest, after it became clear that the City Attorney, UF, and Alachua County (to name just a few) believed that the Opinion prohibits on-campus EV entirely. Motion at 7-10. Indeed, the Secretary *still* refuses to issue clarifying guidance.[6]

## C. Plaintiffs Will Suffer Irreparable Harm

The Secretary's motion largely fails to address the arguments or evidence establishing that Plaintiffs will suffer irreparable harm absent an injunction, other than to assert again that Plaintiffs do not allege constitutionally cognizable burdens

---

[6] Further, the wildcard option does not eliminate the Opinion's disparate or discriminatory burdens. And because only one "wildcard" is available per county, it does not help students in counties with multiple higher educational institutions, or where there are significant communities of voters otherwise located in areas lacking one of the Statute's listed sites.

because they have not been completely disenfranchised. Resp. at 25-26. But, as discussed, this is not the law.

Moreover, although the Secretary speculates about how a generic SOE *might* decline to exercise her discretion if informed that she *could* offer on-campus EV, the Secretary fails to proffer even a single declaration from one of Florida's 67 SOEs that supports the Secretary's conjecture or states that the SOE would not offer EV on campus—much less evidence that all SOEs would decline to do so.

Nor does the Secretary attempt to rebut former SOE Sancho's declaration as to the benefits of offering EV at FSU. *See* Sancho Decl. ¶¶ 6-11. Instead, the Secretary focuses myopically on the availability of parking at FSU, never explaining why those considerations justify *prohibiting* SOEs from offering on-campus EV. *See* Suppl. Sancho Decl. ¶ 10 ("[SOEs] should not be limited in their ability to place [EV] . . . so as to provide all of the voters in their jurisdiction with an equal opportunity to cast an early ballot, such that they can only do so for those voters who drive to [EV] sites.)

### D.    The Balance of the Equities and Public Interest Favor Relief

The Secretary asserts, without evidence, that restoring the SOEs' discretion to offer on-campus EV will "inject unnecessary confusion and uncertainty into" and "disrupt" the election. Resp. at 3. The scant details of that claim only undermine his position: he *admits* SOEs are not required to identify EV sites for

the primary until July 29, or (under the same authority the Secretary cites) for the general election until October 7. *See* Resp. at 27 (citing Fla. Stat. § 101.657(b)).

As Plaintiffs have repeatedly emphasized, they are not seeking an order requiring SOEs to exercise their discretion in a particular way; thus, the assertion that the injunction would "add[] one more task" to the SOEs' plates and "could have a disruptive, cascading effect on a well-planned timeline," Resp. at 27, is perplexing to say the least. Further, the Secretary does not even attempt to rebut the testimony of SOE Sancho on this point, which states the opposite of what the Secretary claims. *See* Sancho Decl. ¶¶ 9-12.

Perhaps recognizing this, the Secretary focuses here on asserting that Plaintiffs should have brought this action when the Opinion was issued in January 2014, but this, too, is easily rejected. It ignores that the individual Plaintiffs were not yet eligible to vote. *See* Newsome Supp. Decl. ¶ 2; Roy Supp. Decl. ¶ 2; Declaration of Amol Jethwani (ECF No. 29) ¶ 3; Declaration of Dillon Boatner (ECF No. 26) ¶ 3. One of the youngest individual Plaintiffs, Alexander Adams, will be voting in his first election in August. Declaration of Alexander Adams (ECF No. 25) ¶¶ 3, 8-9. Anja Rmus will be voting in her first non-municipal election. Declaration of Anja Rmus (ECF No. 31) ¶¶ 3, 8-9. Indeed, one of the cases upon which the Secretary relies (in which the Court of Appeals stayed a remedy issued a mere two weeks before the November 2016 election) indicates the

11

court might have decided differently had the plaintiff recently become eligible to vote. *See Crookston v. Johnston*, 841 F. 3d 396, 397-99 (6th Cir. 2016).[7]

Finally, the Secretary's confusing legislative enactment argument, Resp. at 29-30, again misconstrues Plaintiffs' requested relief, which does not seek to suspend a "legislative enactment." Furthermore, it is both illogical and disingenuous for the Secretary to repeatedly argue that the Opinion has limited impact and is not binding on hardly anyone, and at the same time equate it with a legislative enactment. Further, the case the Secretary cites in support—*Ne. Fla. Chapter. of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283 (11th Cir. 1990)—involved a preliminary injunction reversed due to a failure to show *irreparable injury*. *Id.* at 1286. In contrast, deprivations of voting rights—and, specifically, providing less access to EV to some voters than others—clearly constitute irreparable injury. *See* Motion at 34.

---

[7] All of the cases the Secretary cites are easily distinguished. *See Conservative Party of N.Y. State v. N.Y. State Bd. of Elections*, No. 10-CV-6923 (JSR), 2010 WL 4455867, at *1-2 (S.D.N.Y. Oct. 15, 2010) (motion filed six weeks before election seeking relief that record demonstrated could only be implemented with considerable difficulty and would cause substantial confusion); *Silberberg v. Bd. of Elections of the State of N.Y.*, 216 F. Supp. 3d 411, 414-15 (S.D.N.Y. 2016) (action filed 13 days before general presidential election); *Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018) (motion seeking to suspend elections under congressional apportionment map not filed until six years after complaint, and seven years into ten-year redistricting cycle).

### III. CONCLUSION

Plaintiffs respectfully request that the Court issue the requested preliminary injunction.

### LOCAL RULE 7.1(F) CERTIFICATION

Counsel for Plaintiffs, Fritz Wermuth, Esquire, certifies that this motion contains 3,160 words.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 10, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Dated:  July 10, 2018					By: /s/ Frederick S. Wermuth
							Frederick S. Wermuth
							Florida Bar No.: 0184111
							KING, BLACKWELL, ZEHNDER
								& WERMUTH, P.A.
							P.O. Box 1631
							Orlando, FL 32802-1631
							Telephone: (407) 422-2472
							Facsimile: (407) 648-0161
							fwermuth@kbzwlaw.com

							Marc E. Elias
							Elisabeth C. Frost*
							Amanda Callais*
							Jacki L. Anderson*
							John M. Geise*
							Alexi M. Velez*
							PERKINS COIE LLP
							700 Thirteenth St., N.W., Suite 600
							Washington, D.C. 20005-3960
							Telephone: (202) 654-6200
							Facsimile: (202) 654-9959
							melias@perkinscoie.com
							efrost@perkinscoie.com
							acallais@perkinscoie.com
							jackianderson@perkinscoie.com
							jgeise@perkinscoie.com
							avelez@perkinscoie.com

							*Counsel for the Plaintiffs*
							 *Admitted Pro Hac Vice*

14