# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

**LEAGUE OF WOMEN VOTERS OF FLORIDA, INC., et al.,**

    *Plaintiffs*,

V.                                    CASE NO. 4:18-CV-251-MW/CAS

**KENNETH W. DETZNER, in his official capacity as the Florida Secretary of State,**

    *Defendant*.

_____/

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

This Court has considered, after hearing, Defendant's motion to abstain and, in the alternative, Defendant's motion to dismiss. ECF No. 20.[1] The motion is **DENIED**.

Plaintiffs are a group of six Florida college students and two organizations, the League of Women Voters and the Andrew Goodman Foundation, Inc. ECF No. 16, at ¶¶ 15–22. Defendant is Florida's Secretary of State and its "chief election officer." Fla. Stat. § 97.012. In Florida, county supervisors of elections may designate several different locations as early voting sites, including "any city hall, permanent public library facility,

---

[1] This Court heard the present motion and Plaintiffs' motion for preliminary injunction in person on July 16, 2018.

1

fairground, civic center, courthouse, . . . or government-owned community center." Fla. Stat. § 101.657(1)(a). In a written opinion dated January 17, 2014 ("the Opinion"), Defendant interpreted this law to exclude "any . . . college- or university-related facilities" as an early voting site. ECF No. 24, Ex. A, at 3.[2]

Plaintiffs allege that Defendant's interpretation of this statute infringes on their First, Fourteenth, and Twenty-Sixth Amendment rights. ECF No. 16, at ¶¶ 79–98. In other words, Plaintiffs are alleging violations of the U.S. Constitution. They do not ask this Court to interpret Florida law.[3]

# I

Defendant first moves for this Court to abstain so a state court can address this dispute. *Id.* at 12–17; *see generally R.R. Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941). A federal court may stay proceedings under *Pullman* abstention for "a state court resolution of underlying issues of state

---

[2] The Director of the Division of the Elections signed the Opinion. The Division of Elections, which is part of the Florida Department of State, is the body through which the Secretary of State issues "formal opinions on the interpretation of election laws." ECF No. 33, at ¶ 14

[3] This Court cannot emphasize this point enough. Plaintiffs are alleging violations of the U.S. Constitution. They do not seek this Court to "instruct state officials on how to conform their conduct to state law," as Defendant insinuates. ECF No. 46, at 2 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) *and Hand v. Scott*, 888 F.3d 1206, 1213–14 (11th Cir. 2018)). The Eleventh Circuit's invocation of *Pennhurst* in *Hand* dealt with the narrow issue of remedies and the panel's erroneous construction of this Court's order. This Court then was explicitly mindful of *Pennhurst*. *Hand v. Scott*, 2018 WL 1508874, at *7 (N.D. Fla. Mar. 27, 2018)") (citing *Pennhurst*, 465 U.S. at 106) ("[T]his Court treads carefully through longstanding principles of federalism. In so acknowledging *Pennhurst* and longstanding principles of federalism, this Court ordered remedies on the basis of federal law—not state law. *Id.* at *8 (citing *Pennhurst*, 465 U.S. at 106) ("This Court does not enter an injunction pursuant to Florida law."). *Hand* is otherwise wholly inapposite here.

law." *Harman v. Forssenius*, 380 U.S. 528, 534 (1965). A federal court can abstain under *Pullman*, if (1) the case presents an unsettled question of state law, and (2) the question of state law is dispositive of the case or would materially alter the constitutional question presented. *Id.*

Generally, "abstention is discretionary." *Siegel v. Lepore*, 234 F.3d 1163, 1174 (11th Cir. 2000). The Supreme Court has made clear that "the power to dismiss under the *Burford* doctrine, *as with other abstention doctrines*, . . . derives from the *discretion* historically enjoyed by courts of equity." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 727–28 (1996) (emphases added). In exercising its discretion, a federal court must consider whether "certain classes of cases, and certain federal rights" are more appropriately "adjudicated in federal court." *Id.* at 728.

Abstention is improper when a party alleges that certain rights are threatened. In considering abstention, courts "must also take into consideration the nature of the controversy and the particular right sought to be enforced." *Edwards v. Sammons*, 437 F.2d 1240, 1243 (5th Cir. 1971).[4] The Supreme Court has repeatedly held abstention is inappropriate when First Amendment rights, rights related to school desegregation, and voting rights are alleged at issue. *Id.* (citing *Forssenius*, 380 U.S. at 537 (abstention

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

3

improper when voting rights violation being alleged), *Baggett v. Bullitt*, 377 U.S. 360, 375–80 (1964) (abstention improper when First Amendment violation being alleged), *and Griffin v. County Sch. Bd. of Prince Edward Cty.*, 377 U.S. 218, 229 (1964) (abstention improper when school desegregation violations being alleged)); *see also Siegel*, 234 F.3d at 1174 (collecting same cases holding abstention improper).

The Eleventh Circuit has rejected the argument that a federal court should abstain under *Pullman* in no uncertain terms. It stressed that courts must "take into account the nature of the controversy and the importance of the right allegedly impaired." *Siegel*, 234 F.3d at 1174 (citing *Edwards*, 437 F.2d at 1243). Then, drawing from decades of precedent, the Eleventh Circuit concluded that "[o]ur cases have held that voting rights cases are particularly inappropriate for abstention." *Id*. This conclusion was "strengthened by the fact that Plaintiffs allege a constitutional violation of their voting rights." *Id*.[5]

The law is crystal clear in the Eleventh Circuit. Federal courts do not abstain when voting rights are alleged to be violated. Therefore, unambiguous

---

[5] This Court notes that *Siegel v. Lepore*—one of the cases originating from the 2000 presidential election—involved no less than six opinions, including one concurrence and four dissents. Dissenting judges who addressed the abstention issues agreed that abstention in the voting rights dispute was inappropriate. *See id.*, at 1193 ("I agree with the majority's disposition of the issue[] of abstention") (Dubina, J., dissenting); *and id.* at 1194 ("I agree with the Court . . . that there is no basis for this Court to abstain.") (Carnes, J., dissenting).

4

holdings from binding precedent severely confines this Court's discretion to abstain.

Granting Defendant's motion to abstain would fly in the face of decades of binding law. *See Harman*, 380 U.S. at 537 ("Given the importance and immediacy of the problem [of the right to vote], and the delay inherent in referring questions of state law to state tribunals, [] it is evident that the District Court did not abuse its discretion in refusing to abstain.") (citations omitted). Given the federal rights Defendant is allegedly threatening, this Court declines to abuse its discretion by granting Defendant's motion to abstain. Simply put, abstention is inappropriate here.

Although the nature of this controversy and the inapplicability of discretionary abstention is dispositive on this issue, this Court observes that abstention would not provide a quick resolution to this case, as Defendant argues. ECF No. 20, at 16–17. On the contrary. Abstention would result in substantial delay as the issue works its way through state court, a process that will likely last beyond the current election cycle. "The delay which follows from abstention is not to be countenanced in cases involving such a strong national interest as the right to vote." *Edwards*, 437 F.2d at 1244. Again, this Court follows the plain commands of binding precedent.

Defendant also argues that this should Court decline to reach the merits of this dispute under the doctrine of constitutional avoidance—a doctrine that

is part and parcel of the *Pullman* analysis. *See Duke v. James*, 713 F.2d 1506, 1510 (11th Cir. 1983) (explaining how *Pullman* applies when there is an unsettled question of state law and "that the question be dispositive of the case and would avoid, or substantially modify, the constitutional question."). Constitutional avoidance could be appropriate if this Court were able to decide this dispute on alternative grounds. *See, e.g.*, *Clark v. Martinez*, 543 U.S. 371, 381 (2005) (describing constitutional avoidance as "a tool for choosing between competing plausible interpretations of a . . . text"). But the only alternative ground for avoidance that Defendant identifies is through *Pullman* abstention. As described above, *Pullman* abstention is inappropriate when voting rights are alleged to be infringed. And "federal courts should not abstain in order to avoid the task of deciding the federal constitutional issues in a case." *Pittman v. Cole*, 267 F.3d 1269, 1287 (11th Cir. 2001).

## II

In the alternative, Defendant moves to dismiss for lack of subject matter jurisdiction and failure to state a cause of action. ECF No. 20, at 17–21. These arguments are not persuasive.

## A

To start, Defendant contends that Plaintiffs lack standing because they cannot satisfy the "redressability" element necessary to establish standing. ECF No. 20, at 17–19. Specifically, he seems to assert that he is not the proper

defendant; rather, he appears to argue that the 67 county supervisors of elections are the proper defendants. *Id*. at 20. He also argues that Plaintiffs' remedies are speculative. *Id*. at 21–22. Finally, Defendant claims that the two organizational Plaintiffs—the Andrew Goodman Foundation and the League of Women Voters—do not have standing. *Id*. at 20, at ns. 6 & 7. This Court addresses each argument in turn.

1. **Defendant is the Proper Defendant and Invalidating Defendant's Opinion Can Redress Plaintiffs' Injuries.**

First, Defendant is the proper Defendant and Plaintiffs' injuries may be redressed by the invalidation of Defendant's Opinion. Plaintiffs allege that Defendant's opinion "restricts supervisors of elections' ability to designate early voting sites . . ." ECF No. 16, at ¶ 82. The result, Plaintiffs claim, is that "the Secretary has limited the discretion of local supervisors of elections." *Id*. at ¶ 78. Plaintiffs seek the restoration of local supervisors' discretion. In response, Defendant argues that Plaintiffs have not sued the supervisors of elections who are "charged with exercising *discretion* in the selection of early voting sites." ECF No. 20, at 17 (emphasis in original).

Defendant's response is a head-scratcher. While Plaintiffs argue that the Defendant has limited the supervisors of elections' discretion in setting early voting sites, Defendant simply insists in response that the supervisors have discretion. At the motion to dismiss phase, this Court must decide whether

7

Plaintiffs' amended complaint "contain[s] sufficient factual matter, accepted as true, [that] state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible when the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

Here, it is reasonable to infer that Defendant's Opinion has limited the discretion Florida law grants to supervisors of elections. *See generally* ECF No. 24, Ex. A; *see also* ECF No. 33, at ¶ 16 ("Florida's Supervisors of Election generally treat written opinions of the Division . . . as authoritative and follow such opinions, absent contrary directive by a court, by statute, or by the Secretary of State.") *and Fla. Democratic Party v. Detzner*, 2016 WL 6090943 (N.D. Fla. Oct. 16, 2016) (describing Defendant's power vis-à-vis supervisors of elections and observing those powers were not "some recent invention"). It strains credulity to imagine Plaintiffs suing 67 individuals to exercise discretion while simultaneously arguing those same individuals have been stripped of discretion. In short, Defendant, who is Florida's "chief election officer," is the proper Defendant. Fla. Stat. § 97.012.

Moreover, a favorable ruling can redress Plaintiffs' injuries. They seek the restoration of discretion to supervisors of elections, who have been constrained by Defendant's Opinion. ECF No. 42, at 23. If the Opinion does

violate the First, Fourteenth, or Twenty-Sixth Amendment, then its invalidation would restore the supervisors' discretion.

Defendant makes the dubious argument that the Opinion constrains *only* the Alachua County supervisor of elections. ECF No. 20, at 6 (Advisory Opinions "bind[] only the 'person or organization who sought the opinion or with reference to whom the opinion was sought . . . .'") (quoting Fla. Stat. § 106.23(2). This argument is faulty for a host of reasons.

First, many Plaintiffs are Alachua County voters and the Opinion's invalidation would redress their injuries. ECF No. 16, at ¶¶ 17–19 & 22 (identifying Plaintiffs Megan Newsome, Amol Jethwani, Jaime Roy, and Anja Rmus as Alachua County voters). Second, the Opinion's expansive language specifies a broader reach than merely the University of Florida's and Santa Fe College's campuses. It excludes "any . . . college- or university-related facilities" as an early voting site. ECF No. 24, Ex. A, at 3. Third, Defendant is legally bound to "[o]btain and maintain uniformity in the interpretation and implementation of election laws." Fla. Stat. § 97.012(1). A prohibition on early-voting sites on college campuses in Alachua County but not in 66 other counties hardly fits the definition of uniformity. Finally, as a practical matter, "Florida's Supervisors of Election generally treat written opinions of the Division . . . as authoritative and follow such opinions." ECF No. 33, at ¶ 16. It is no stretch of

9

the imagination that the 66 supervisors of elections outside of Alachua County will not attempt to circumvent Defendant's Opinion.

### 2. Plaintiffs' Proposed Relief is Not Mere Speculation.

Second, Plaintiffs' proposed relief is not "merely speculative." *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1266 (11th Cir. 2011). Plaintiffs have pleaded sufficient facts to demonstrate the likelihood that some public universities will host an early voting site if this Court invalidates Defendant's Opinion. Specifically, they show that the Alachua County Board of County Commissioners, the Gainesville City Commission, and the Student Senate of the University of Florida have *all* passed resolutions expressing support—including pledging financial support—for an early voting site on the University of Florida campus. *See* ECF Nos. 24, Exs. J & H, ECF No. 30, at ¶ 17. Moreover, Plaintiffs cite a University of Florida spokeswoman who indicated that "UF is not opposed at all to hosting early voting, but it is our understanding that we are precluded under state law from doing so." ECF No. 24, Ex. O, at 3. These facts are sufficient to show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Hollywood Mobile Estates*, 641 F.3d at 1266.

It is true that the supervisors of elections would not be *required* to place an early voting site on public university campuses because of these supportive resolutions. Even so, the strong support from local elected officials indicates

10

that the supervisor of elections—who is elected from the same electorate as the Alachua County Board of County Commissioners, *see* Fla. Stat. § 98.015(a) ("A supervisor of elections shall be elected in each county . . .")—could mirror the support of the county's elected leaders. Such action is more than mere speculation because this Court is able "to ascertain from the record whether the relief requested is likely to redress the alleged injury." *Steele v. Nat'l Firearms Act Branch*, 755 F.3d 1410, 1415 (11th Cir. 1985).

This evidence provides more support for the likelihood of Plaintiffs' relief than other courts have relied on. For example, in *Obama for America v. Husted*, 697 F.3d 423 (6th Cir. 2012), the Sixth Circuit affirmed a district court's restoration of Ohio boards' of elections discretion in setting hours and days for early voting in the three days leading up to Election Day. *Id.* at 437 (noting that the district court's "order clearly restores . . . returning discretion to local boards of elections"). In doing so, the court enjoined Ohio's Secretary of State "from preventing [non-military] voters from participating in early voting." *Id.* at 437; *see also id.* at 427 (describing how Ohio Secretary of State's directive "eliminated the local boards' discretion to be open on weekends during" the three days before Election Day). The district court did not *require* Ohio's boards of elections to institute early voting; in fact, it did not even opine on the likelihood that any or all the state's boards of elections would reinstate the requested early voting times. Rather, the district court merely stopped the

11

Secretary of State from prohibiting early voting. *Id.* ("[T]he State is not affirmatively required to order the boards to be open for early voting.").[6]

The same circumstances exist here. Plaintiffs are not requesting that Defendant order Florida's supervisors of elections to place early voting sites on public campuses. Rather, they seek the return of the supervisors' discretion in setting early voting locations. In seeking this relief, they provide evidence demonstrating Plaintiffs' requested relief is more than mere speculation to show that, in at least one county, such discretion may lead to an early voting site on a public university campus.

3. *Organizational Plaintiffs Have Standing.*

Finally, Defendant's contention that two organizational Plaintiffs—the League of Women Voters and the Andrew Goodman Foundation—lack standing is unpersuasive. As Plaintiffs correctly observe, "when there are multiple plaintiffs [] [a]t least one plaintiff must have standing to seek each form of relief requested in the complaint." ECF No. 42, at 19 (quoting *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017)).

---

[6] Defendant argues that *Obama for America* is distinguishable because the district court considered a study that concluded "over 100,000 voters would vote in person during the last three days before Election Day." *Obama for America v. Husted*, 888 F. Supp. 2d 897, 903 (S.D. Ohio 2012). Here, however, Plaintiffs "cannot point to a single voter being disenfranchised . . ." ECF No. 45, at 5. As this Court explains below, *see infra*, at 14–15, demonstrations of *disenfranchisement* is not the standard. Rather, courts look to the *burdens* on the right to vote. *See, e.g.*, *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 191 (2008) ("However slight that burden may appear . . . it must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation.") (quoting *Norman v. Reed*, 502 U.S. 279, 288–89 (1992)).

Defendant does not argue that all individual Plaintiffs lack standing. Defendant only identifies Plaintiff Dillon Boatner, a student member of the League of Women Voters, as an individual plaintiff without standing because he is not registered to vote in Alachua County. ECF No. 20, at 7. Boatner, however, explains that "I intend to change my registration to Alachua County, Florida, where I live during the academic year . . ." ECF No. 22, at ¶ 2; *see also* ECF No. 16, at ¶ 20. Boatner's intent, which is extraordinarily reasonable considering he spends more than eight months a year in Alachua County, is sufficient to confer standing on him *and* associational standing to the League of Women Voters. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000) (explaining that an organization can enforce its members' rights "when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organizations purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit"); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983) (explaining how proper plaintiffs must have real and immediate personal stake in cases to confer standing) (citations omitted).

The Andrew Goodman Foundation has associational standing under the same line of reasoning. Individual Plaintiffs Megan Newsome and Jamie Roy—

13

whose standing Defendant does not dispute—are members of the organization. ECF No. 30, at ¶ 3 *and* ECF No. 32, at ¶ 3.

Because both organizations have associational standing through their members, this Court need not discuss whether the organizations have standing on their own. *See* ECF No. 42, at 22 –23 (arguing how the two organizations have standing on their own right).

B

Next, Defendant argues that Plaintiffs have failed to state a claim by not alleging any actionable burdens under the *Anderson-Burdick* balancing test.[7] ECF No. 20, at 19–21; *Burdick v. Takushi,* 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze,* 460 U.S. 780, 789 (1983)). Specifically, he quibbles with Plaintiffs' "fail[ure] to allege a *single* instance of a voter actually being unable to vote because of the Division's 2014 Advisory Opinion." *Id.* at 19.

As the parties know, under *Anderson-Burdick,* a court must "weigh the 'character and magnitude of the asserted injury to the rights . . . that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick,* 504 U.S. at 434 (quoting *Anderson,* 460 U.S. at

---

[7] This Court notes that Defendant assumes in his motion that the Twenty-Sixth Amendment is analyzed under *Anderson-Burdick*. ECF No. 20, at 11 n.3.

789). Defendant has described this test as "a holistic, flexible inquiry." ECF No. 43, at 8.

Defendant's argument is not persuasive because a voter need not have been effectively disenfranchised to state a claim under *Anderson-Burdick*. Rather, the standard calls for a "holistic, flexible inquiry," as Defendant describes. *Id*. In *Burdick*, for example, the Supreme Court observed that Hawaii's prohibition on write-in voting "imposes only a limited burden" on voters. *Burdick*, 504 U.S. at 439. Even so, the Court applied the balancing test. *Id*. at 438–39.

It is sufficient for a 12(b)(6) motion that Plaintiffs have alleged the lack of early-voting sites on public university campuses have burdened their voting rights.[8] Looking *only* to whether Defendant's Opinion actively disenfranchised a voter is neither holistic nor flexible—nor is it the correct application of the *Anderson-Burdick* test.

### III

Because *Pullman* abstention is inappropriate here, because Defendant is the proper defendant and the invalidation of his Opinion could redress Plaintiffs' claims, because Plaintiffs alleged injuries may be redressed beyond mere speculation, because all Plaintiffs have standing, and because Plaintiffs

---

[8] This Court addresses the merits of Plaintiffs' First and Fourteenth Amendment claims in its Order on Preliminary Injunction. ECF No. 65, at 16–29.

15

have stated a claim on which relief can be granted, Defendant's motion to dismiss is **DENIED**.

    **SO ORDERED on July 24, 2018.**

                                              <u>s/Mark E. Walker</u>
                                              **Chief United States District Judge**