UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF FLORIDA, INC., THE ANDREW GOODMAN FOUNDATION, INC., MEGAN NEWSOME, AMOL JETHWANI, MARY ROY a/k/a JAMIE ROY, DILLON BOATNER, ALEXANDER ADAMS, and ANJA RMUS,<br><br>　　Plaintiffs,<br><br>　　　v.<br><br>KENNETH W. DETZNER, in his official capacity as the Florida Secretary of State,<br><br>　　Defendant. | Case No. 4:18-cv-00251 (MW/CAS) |

### PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO DETERMINE ENTITLEMENT TO ATTORNEYS' FEES, EXPERT FEES, AND LITIGATION EXPENSES

As a direct result of Plaintiffs' success on their motion for a preliminary injunction ("PI Motion") (ECF No. 36), the Secretary of State *rescinded* his 2014 Advisory Opinion (the "2014 Opinion") that prohibited early voting on Florida's college and university campuses, materially altering the legal relationship between Plaintiffs—student voters and organizations that promote student voting—and the State. (*See* ECF No. 68-1 at 1) (advising supervisors of elections that 2014 Opinion

"is hereby rescinded").[1] In the weeks that followed, several of Florida's supervisors, for the first time ever, announced they would locate eleven early voting sites on campuses across the State, giving unprecedented access to early voting for student voters in the November election. (*See* ECF No. 79 at 6-8). By the close of early voting, ***nearly 60,000*** ballots were cast at those locations, none of which would have existed but for Plaintiffs' success on the PI Motion. The Secretary did not appeal the Court's Order granting the PI Motion and the early voting period for the November election has concluded. There is nothing "transient" or "ephemeral" about Plaintiffs' victory. (*See* ECF No. 84 at 2). For all of the reasons set forth here and in Plaintiffs' Motion, the Court should find that Plaintiffs are entitled to an award under 42 U.S.C. § 1988 ("Section 1988").

## ARGUMENT

### A. Plaintiffs' Success on the PI Motion Enabled Nearly 60,000 Florida Voters to Cast Early Ballots

Early, in-person voting for the 2018 General Election began on October 22 and ended on November 4.[2] As the table below illustrates, by the end of that period, nearly 60,000 voters cast their ballots at the eleven on-campus early voting

---

[1] In addition, the PDF of the 2014 Opinion available on the Secretary's website has been stamped in red capital letters, "RESCINDED." *See* 2014 Op., *available at* https://dos.myflorida.com/media/694346/de1401.pdf (last visited Nov. 8, 2018).

[2] Under Florida law, the supervisors had the discretion to offer early voting beginning on Monday, October 22 through Friday, October 26; they were required to offer early voting from Saturday, October 27 through Saturday, November 3, and had the discretion to do so on Sunday, November 4. Fla. Stat. § 101.657(d).

sites that would not have existed, but for Plaintiffs' success in this matter:

| CAMPUS | LOCATION | VOTES |
|---|---|---|
| University of Florida | J. Wayne Reitz Union | 7,908 |
| Florida State University | Tucker Center | 6,114 |
| University of Central Florida | Live Oak Event Center | 5,117 |
| University of South Florida | Yuengling Center | 4,666 |
| University of North Florida | UNF University Center | 3,416 |
| Edward Waters College | Schell-Sweet Community Center | 2,109 |
| Florida Atlantic University | Housing & Residential Education Building | 4,410 |
| Florida Int'l University | Student Academic Success Center | 7,704 |
| Nova Southeastern University | Huizenga College of Business | 4,871 |
| Miami-Dade, North Campus | North Campus Library | 5,643 |
| Miami-Dade, Kendall Campus | Fascell Conference Center | 5,681 |
| **Total** | | **57,639** |

While the aggregated numbers are independently impressive and strongly evidence Plaintiffs' exceptional success in this action, the impact on young voters goes far beyond eliminating unconstitutional and discriminatory barriers to the ballot box. The Court's Order granting the PI Motion and the resulting dramatically expanded access to early voting for young people in Florida has had a profound impact on the Plaintiffs and other impacted young voters. *See, e.g.*, Hannah Beatty, *First two days of early voting at Reitz draws in more than 1,000 people*, Independent Florida Alligator (Oct. 22, 2018) (quoting Plaintiff Jamie Roy as stating that, "they felt exhilarated by the first day of early voting" and "It's not

often that you get to see the change happen this quickly")[3]; *see also id.* (quoting student voter Meriza Candia as stating that, "We're often the group that they blame a lot of things on," but "When students . . . come out in huge numbers and vote, it's showing other generations that we can do it, we are doing it and you're going to finally have to listen to us"); *id.* (quoting student voter Sabrina Ochoa, who "ma[de] history" as the first to vote at the Reitz Union early voting site). Those voters included first generation citizen voters like Leo Quintero, who the Miami-Dade Department of Elections took to Twitter to celebrate after he "voted for the first time [at Miami-Dade College's] North Campus!"):



**B.  Plaintiffs Are Entitled to a Fee Award Based on Their Success on the PI**

As the Secretary has done throughout these proceedings, he implies that the dramatic expanded access to on-campus early voting was not the result of Plaintiffs' victory, but all just a misunderstanding about the true scope of the 2014 Opinion that gave rise to this litigation. (*See* ECF 68 at 6-8) (asserting Secretary hopes to "convince" Court at trial that the 2014 Opinion "did *not* impose a

---

[3] *Available at* https://www.alligator.org/news/first-two-days-of-early-voting-at-reitz-draws-in/article_61d4c810-d66c-11e8-8f4a-6fb98be78cf6.html/.

- 4 -

prohibition on on-campus early voting sites"). But the Secretary made this same argument during the PI proceedings, and the Court thoroughly rejected it.[4] Moreover, this argument is a *legal* argument, not a factual one. Thus, the Secretary's assertion that factual discovery (of exactly what sort, the Response is not at all clear) could plausibly change the Court's conclusion that, on its face, the 2014 Opinion prohibited on-campus early voting is not well-founded.

The Secretary's continued insistence that supervisors were always free to place early voting on campuses is also belied by the Secretary's behavior, both

---

[4] The Secretary cites several portions of the transcript of the PI hearing that demonstrate this. (*See id.*) (citing Hr'g Tr. (ECF No. 62) at 30-31 (defense counsel arguing 2014 Opinion is not binding); 43-45 (colloquy between defense counsel and Court about the plain meaning of 2014 Opinion); 85-87 (defense counsel arguing 2014 Opinion was narrowly limited to whether Reitz Union was a "government-owned community center" or "convention center" for the purposes of Fla. Stat. § 101.657). At the same time, the Response fails to acknowledge that, in its 40-page opinion, the Court carefully considered and rejected each of these arguments on the merits. (*See* ECF No. 65 at 12 n.6) ("[T]his Court determined Defendant's arguments regarding the limited scope of the Opinion to be disingenuous and therefore unpersuasive."); (*id.* at 15 & n.7) (finding 2014 Opinion must be read to "mean[] that any on-campus facility cannot be an early voting site" and explicitly rejecting defense counsel's "attempt[] to narrow the Opinion's scope as merely interpretations of 'convention center' and 'government-owned community center'") (citing Hr'g Tr. at 85-87); (*id.* at 19) (finding "Florida's public college and university students are *categorically prohibited* from on-campus early voting because of Defendant's Opinion"); (*id.* at 26) (same); (*id.* at 28) (finding "[2014] Opinion is a broad answer to a narrow question, effectively inserting a prohibition into an otherwise flexible authorizing statute"); (*id.* at 37-38) (holding 2014 Opinion's invalidation "restores supervisors' of elections discretion in designating early voting sites according to the Early Voting Statute"); (*see also* ECF No. 64 at 7, 9) (finding Secretary's assertion that supervisors are not bound by 2014 Opinion "a head-scratcher" and "faulty for a host of reasons").

prior to this litigation and during its course. The Secretary was given multiple opportunities to clarify the scope of the 2014 Opinion and make it clear that supervisors could place early voting sites on campus; he repeatedly refused to do so. (*See, e.g.*, ECF No. 36 at 14-16, 38); (ECF No. 47 at 8 n.3); (*see also* Hr'g Tr. (ECF No. 62) at 47-56) (colloquy between Court and defense counsel in which counsel repeatedly declined to affirmatively state that supervisors could place early voting sites on campus even using the "wild card" option, much less in any site otherwise permitted by the plain language of Fla. Stat. § 101.657).

The Secretary's bald assertion that "the past reluctance of . . . supervisors . . . to place early voting sites on-campus could have stemmed from issues as simple as parking spaces, the scheduling of home football games on the Saturday before the General Election, or the close proximity of an existing early voting site to campus," (ECF No. 84 at 7), is belied both by the record in this case and the public record. After this Court granted Plaintiffs' PI Motion, for the first time in Florida's history, supervisors across the state opened eleven early voting sites on college and university campuses, at which nearly 60,000 ballots were cast in the November election. (*See supra*); (*see also* ECF No. 47 at 8-9). It is difficult to conceive of a more concrete example of a plaintiff achieving "'actual relief on the merits of his claim [that] materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.'" (ECF No. 84 at 8) (quoting *Farr v. Hobby*, 506 U.S. 103, 111-12 (1992)). The Secretary admits that this is the appropriate standard for determining whether a plaintiff is a prevailing party under Section 1988. (*See id.*). Because it has clearly

been met, the Court should grant Plaintiffs' Motion.

None of the cases that the Secretary relies upon support finding otherwise. Unlike *Sole v. Wyner*, 551 U.S. 75, 84 (2007), for example, this is not a case where the preliminary injunction was issued on a "hasty and abbreviated" hearing "one day after the complaint was filed," on a paltry record, nor did the provisional relief granted "expire[] before appellate review could be gained." Quite to the contrary. Although the Secretary attempts to reduce all of the substantial work that went into obtaining the PI Order into nothing more than a "2 hour and 22 minute hearing," (ECF No. 84 at 2), as detailed in the Plaintiffs' Motion, the record presented to the Court was expansive. (*See* ECF No. 36 at 9-19; ECF No. 24 (multiple affidavits and exhibits submitted in support of PI Motion); ECF No. 25 (same); ECF No. 26 (same); ECF No. 27 (same); ECF No. 28 (same); ECF No. 29 (same); ECF No. 30 (same); ECF No. 31 (same); ECF No. 32 (same); ECF No. 33 (same); ECF No. 34 (same).[5] The fact that witnesses were not presented live was the result of an agreement between the parties, who "agree[d] that this Court may rule on the Motion for Preliminary Injunction based on the papers and argument of counsel." (ECF No. 54). The Court's Order granting the PI Motion was detailed and considered, and carefully discussed each of the Secretary's defenses on the merits. (*See generally* ECF No. 65); (*see also supra* at n.5). Its result was the immediate

---

[5] To get there, Plaintiffs also had to prevail over the Secretary's motion to abstain or dismiss, which argued, *inter alia*, that the federal courts should abstain from deciding Plaintiffs' federal constitutional claims, that Plaintiffs lacked standing, and that there was no guarantee that, even if Plaintiffs prevailed, any supervisors would offer on-campus early voting. (*See* ECF No. 20); (ECF No. 42).

rescission of the Secretary's 2014 Opinion and the establishment of the eleven brand new on-campus early voting sites that almost 60,000 Florida voters utilized to cast their ballots in the November election.

Although the Secretary repeatedly asserts that Plaintiffs' Motion is premature because, he claims, as a general matter, the success obtained could still be "'reversed, dissolved, or otherwise undone,'" (ECF No. 84 at 5) (quoting *Sole*, 551 U.S. at 83), the actual substance of the Response proves the opposite. The Secretary makes no argument that he could not have sought an immediate appeal of the preliminary injunction. 28 U.S.C. § 1292(a)(1) explicitly permits such appeals, but the Secretary opted not to pursue review of the Court's Order, which remains in place today. The Secretary also does not seriously attempt to dispute that, no matter what happens in this litigation, because of Plaintiffs' success on the PI Motion, access to early voting was dramatically expanded for Plaintiffs and literally thousands of other young voters in Florida in the 2018 General Election.

Furthermore, the Secretary's Response all but confirms that, no matter what the Court ultimately decides, that expanded access will remain. The Secretary does not argue that an on-campus early vote ban would be constitutional, he simply repeats his previously-rejected argument that the 2014 Opinion was not a ban. (*See* ECF No. 84 at 6-7). Remarkably, the Secretary now appears to concede that, *even as to its applicability to the University of Florida's Reitz Union*, the 2014 Opinion is no longer valid. (*See id*. at 7 n.5) (detailing renovation of Reitz Union, and implying that opinion is no longer "binding" even there, as a result). At no point does the Secretary indicate that, should the Court ultimately decide that the 2014

Opinion was not an on-campus early voting ban, the Secretary would either *reverse* his rescission of the 2014 Opinion (an action that would be particularly odd now, given the Secretary's concession that it could not even properly apply to Reitz Union at this point), or issue a new opinion effectuating an on-campus early voting ban. Thus, the Secretary's Response effectively demonstrates that there is *no* possibility that Plaintiffs' success in obtaining the recession of the 2014 Opinion will be "reversed, resolved, or otherwise undone," by any further proceedings.

The Secretary's position appears to be that a fee award is never appropriate when judicial proceedings have not been fully resolved, but this position is contrary to both the relevant Supreme Court precedent, and in the Eleventh Circuit in which this Court sits. *See, e.g.*, *Lefemine v. Wideman*, 568 U.S. 1, 24 (2012); *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1356 (11th Cir. 2009); *Ensley Branch, N.A.A.C.P. v. Seibels*, 31 F.3d 1548, 1582-83 (11th Cir. 1994). It is also contrary to the conclusion of virtually every federal circuit court to have considered the question. *See, e.g.*, *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 339 (5th Cir. 1981); *see also Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939 (D.C. Cir. 2005). Indeed, several of the cases that the Secretary cites (almost all of which are from out-of-circuit) state as much. *See, e.g.*, *Sole*, 551 U.S. at 86 ("We express no view on whether, in the absence of a final decision on the merits of a claim for permanent injunctive relief, success in gaining a preliminary injunction may sometimes warrant an award of counsel fees")[6]; *Doe v. Nixon*, 716

---

[6] *Sole*, it should be noted, predates *Lefemine*, 568 U.S. at 24.

F.3d 1041, 1048 (8th Cir. 2013) (recognizing "a preliminary injunction can in some instances . . . convey prevailing party status") (citation and quotation marks omitted); *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 228, 233-34 (3d Cir. 2008) (holding Section 1988 "allows a plaintiff to be the 'prevailing party' when it achieves relief on the merits of its claims in the form of a preliminary injunction, but does not secure a final judgment in its favor" and so finding where, *inter alia*, "defendant, after opposing interim relief, chose not to appeal from that order" and the preliminary relief "did not simply maintain the status quo" but "afforded plaintiffs virtually all of the substantive relief they sought, albeit initially on an interim basis"); *Dupuy v. Samuels*, 423 F.3d 714, 719 (7th Cir. 2005) ("According to the Supreme Court, '[i]t is evident . . . that Congress contemplated the award of fees *pendente lite* in some cases.'") (quoting *Hanrahan v. Hampton*, 446 U.S. 754, 757 (1980)).

For all of the reasons discussed, this is precisely the type of case in which a fee award under Section 1988 based on success on a preliminary injunction is entirely appropriate.

**CONCLUSION**

Plaintiffs respectfully request that their Motion to Determine Entitlement to Attorneys' Fees, Expert Fees, and Litigation Expenses be granted. As noted, if the Court grants this Motion, Plaintiffs will file a motion for determination of the appropriate amount of that award, in accordance with the bifurcated procedure set forth in the local rules. (*See* ECF No. 79 at 2 n.1).

## LOCAL RULE 7.1(B) CERTIFICATION

Counsel for Plaintiffs, Fritz Wermuth, Esquire, certifies that Plaintiffs file this Reply pursuant to this Court's Order requiring same, (*see* ECF No. 85), and that, therefore, no conferral pursuant to Local Rule 7.1(B) was necessary.

## LOCAL RULE 7.1(F) CERTIFICATION

Counsel for Plaintiffs, Fritz Wermuth, Esquire, certifies that this Reply contains 2,650 words.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 12, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Dated:  November 12, 2018          By: Frederick S. Wermuth
                                  Frederick S. Wermuth
                                  Florida Bar No.: 0184111
                                  KING, BLACKWELL, ZEHNDER
                                      & WERMUTH, P.A.
                                  P.O. Box 1631
                                  Orlando, FL 32802-1631
                                  Telephone: (407) 422-2472
                                  Facsimile: (407) 648-0161
                                  fwermuth@kbzwlaw.com

                                  Marc E. Elias
                                  Elisabeth C. Frost*
                                  Amanda Callais*
                                  Jacki L. Anderson*
                                  John M. Geise*
                                  Alexi M. Velez*
                                  PERKINS COIE LLP
                                  700 Thirteenth St., N.W., Suite 600
                                  Washington, D.C. 20005-3960
                                  Telephone: (202) 654-6200
                                  Facsimile: (202) 654-9959
                                  melias@perkinscoie.com
                                  efrost@perkinscoie.com
                                  acallais@perkinscoie.com
                                  jackianderson@perkinscoie.com
                                  jgeise@perkinscoie.com
                                  avelez@perkinscoie.com

                                  *Counsel for Plaintiffs*

                                   *Admitted Pro Hac Vice*