UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

LEAGUE OF WOMEN VOTERS OF FLORIDA,
INC., THE ANDREW GOODMAN
FOUNDATION, INC., MEGAN NEWSOME,
AMOL JETHEWANI, MARY ROY a/k/a
JAMIE ROY, DILLON BOATNER,
ALEXANDER ADAMS, and ANJA RMUS,

          Plaintiffs,

v.

LAUREL M. LEE in her official capacity
as the Florida Secretary of State,

          Defendant.

Case No. 4:18-cv-00251 (MW/CAS)

**PLAINTIFFS' DISPOSITIVE MOTION TO CONVERT THE
JULY 24, 2018 PRELIMINARY INJUNCTION (ECF NO. 65)
INTO A PERMANENT INJUNCTION, AND RESPONSE TO ORDER
ON SUPPLEMENTAL BRIEFING ON MOOTNESS (ECF NO. 91)**

Plaintiffs respond to the Court's Order on Supplemental Briefing on Mootness (ECF No. 91); and, pursuant to Federal Rule of Civil Procedure 56, move the Court to enter a final declaratory judgment and convert into a permanent injunction its July 24, 2018 Order Granting Plaintiffs' Motion for Preliminary Injunction ("PI Order") (ECF No. 65). For the reasons that follow, the Secretary's voluntary temporary cessation of unconstitutional activity to avoid final judgment on the merits, while continuing to deny that activity was unconstitutional in the first place, as well as her refusal to consent to the entry of a permanent injunction that would actually protect Florida voters from repetitive unconstitutional treatment, all establish that this matter is not moot. However, because there are no

remaining disputed issues of material fact, the Court can and should bring this matter to a final, and clear, resolution by converting its PI Order to a permanent injunction. As grounds therefor, Plaintiffs hereby state:

## I. INTRODUCTION

The PI Order made a night-and-day difference in enabling Florida's Supervisors of Election (SOEs) to open early voting on college campuses; in it, the Court found that the Secretary's January 17, 2014 Opinion (the "2014 Opinion") (ECF No. 24-1) "that categorically bars early voting on any university or college campus violates the First, Fourteenth, and Twenty-Sixth Amendments to the U.S. Constitution." (ECF No. 65 at 3). As a result of the PI Order – and *only* as a result of that order – the Secretary issued a directive to the SOEs freeing them to open early voting sites on college and university campuses (at least while this litigation remained pending) (the "2018 Directive"). Although the PI Order was issued shortly before the November election – after the SOEs had completed their early voting site plans – immediately after it was issued, several SOEs opened early voting sites on 11 college campuses, where nearly 60,000 voters cast early ballots in that election, many for the very first time.

From the outset of this matter, the Secretary has taken the defensive posture that the *de facto* embargo against on-campus early voting was just a misunderstanding – supposedly, all on the part of college-host-county SOEs. Yet,

despite repeated calls to clarify that misunderstanding – including directly from the Court at oral argument on Plaintiffs' PI Motion – the Secretary refused to do so. That is, the Secretary failed to act until this Court found that Plaintiffs were likely to succeed on their claims that the Secretary's actions were unconstitutional and granted Plaintiffs' PI Motion.

Even now, the Secretary denies the 2014 Opinion had the obvious effect on SOEs that this Court specifically found. Indeed, last Friday, when issuing her latest directive on this subject (the "2019 Directive") supposedly "to clarify any misunderstandings," the Secretary reasserted her defenses in this case (ECF No. 97 at 4), while separately arguing that this case is moot (ECF No. 98). That the 2019 Directive does not fully resolve the issues in this litigation, however, is evident in its content, which tracks the Secretary's legal position from the outset this case, and on its face invites further questions as to whether, in actual practice SOEs may in fact offer early voting on-campus. It is a subtle point, but a crucial one, as it could very well mean the difference between thousands of Floridians having access to early voting or their being denied it.

Specifically, in arguing at the preliminary injunction stage that the 2014 Opinion did not create an on-campus voting ban, the Secretary repeatedly insisted that all that Opinion really did was prohibit the Gainesville City Attorney from designating the University of Florida's ("UF") *Reitz Union* as an early voting site,

because it did not qualify as a "convention center" or "government-owned community center." (ECF No. 65 at 14 n.7; *see* ECF No. 64 at 9). The Court found that position to be "disingenuous," (ECF No. 65 at 12 n.6); yet, rather than walk it back, the 2019 Opinion only appears to double down. (*See* ECF No. 98-1 ¶ 3).  At the very least, it openly lays the groundwork for the exact same conduct that the PI Order found unconstitutional.

Rather than affirm that SOEs who offered on-campus early voting during the 2018 Election may continue to do so in the future, or even clarify that the Secretary no longer takes the position that the Reitz Union (or sites like it) may not be used for early voting – the 2019 Directive artfully avoids providing either comfort. In truth, it is not meaningfully different than the position that the Secretary has taken from the outset of this litigation. And the Secretary's open refusal to revise her position is particularly problematic now, given that following the Court's PI Order, early voting *was* offered at Reitz Union in the November 2018 election. Indeed, of all 11 on-campus early voting sites that were opened as a direct result of the PI Order, it was the one where the most early ballots were cast, boasting nearly 8,000 in total. (*See* ECF No. 86 at 3).

Nothing in the 2019 Directive either indicates to the SOE that opened that site (or to any other SOE, for that matter) that the Secretary now views the Reitz Union as an appropriate (and legal) early voting site under Florida law, nor does it

restrict the Secretary in any way from taking the contrary position again. In fact, it appears to re-endorse that position. (*See* ECF No. 98-1 ¶ 3) This raises serious concerns about whether the Secretary intends to expressly (or implicitly) bar early voting at Reitz Union based on the same grounds as set forth in the 2014 Opinion that the Court found unconstitutional. This would be problematic in its own right, but it would have much broader implications, as many (if not all) of the ten other sites opened on-campus following the PI Order appear to have been placed in similar facilities. (ECF No. 86 at 3). Thus, the 2019 Directive would appear to permit the Secretary to achieve by somewhat subtler (but equally as pernicious) means effectively the same on-campus voting ban that the Court found unconstitutional.

In sum, instead of a clear change in legal position, the 2019 Directive is just more of the same from the Secretary. And its timing strongly indicates that its true purpose is to attempt to moot this case to avoid entry of a permanent injunction that would both unambiguously protect Florida's young voters from the revival of this discriminatory policy in the future, and give clear comfort to SOEs who would offer on-campus early voting that they are legally permitted to do so and will not have to parry future similar attempts to "construct" the early voting statute so as to undermine or chill those efforts.

- 5 -

These circumstances, as well as the fact that the PI Order only served to enter preliminary (and therefore, temporary) relief, and that the Secretary has indicated she will *oppose* entry of a *permanent* injunction, all demonstrate that this case is not moot. There are, however, no disputed issues of material fact, so the Court may and should convert its preliminary relief to a permanent injunction, bringing this matter to a final, and clear, resolution.

Without permanent relief from this Court, the Secretary may explicitly direct or implicitly signal that SOEs lack discretion to allow on-campus early voting – including by issuing an opinion nearly identical to the 2014 Opinion that simply strips out the extraneous language referring to any facility associated with an educational institution, in favor of a narrow assertion that student unions do not qualify as any of the types of facilities that Florida law approves of for early voting purposes. Never mind that such an opinion would be clearly indefensible, both in light of the findings of intentional discrimination in the Court's PI Order and the plain language of the statute, the 2019 Directive clearly leaves this door wide open. Indeed, the Directive might fairly be read by some to already affirmatively take that position. (*See* ECF No. 98-1 ¶ 3.) As the Secretary does not appear to appreciate the profoundly chilling effect such supposedly limited acts have on SOEs, an enduring injunction is an appropriate guidepost to avoid the same problem in the future. At the very least, a final declaratory judgment is appropriate

to put the Secretary's baseless denials to rest.

Converting the PI Order to a permanent injunction is appropriate for four reasons. First, the findings in the PI Order resolve all factual and legal claims against the Secretary, none of which are likely to be impacted by further discovery. Second, the Order was issued after extensive legal and evidentiary briefing and oral argument, making further hearing or evidentiary proceedings unnecessary to proceed to final judgment. Third, no other issue of substantive relief remains unresolved, save for an award of fees and costs. Finally, the Secretary has failed to meet her heavy burden to establish mootness.

## II. BACKGROUND

What follows is undisputed or the previous factual findings of this Court. Section 101.657(1)(a), Florida Statutes (the "Early Vote Statute"), provides in part:

> As a convenience to the voter, the supervisor of elections shall allow an elector to vote early in the main or branch office of the supervisor. . . . The supervisor may also designate any city hall, or permanent public library facility, fairground, civic center, courthouse, county commission building, stadium, convention center, government-owned senior center, or government-owned community center as early voting sites; however, if so designated, the sites must be geographically located so as to provide all voters in the county an equal opportunity to cast a ballot, insofar as is practicable.[1]

"The Early Vote Statute did not include language from a proposed amendment that would have added 'any . . . Florida College System institution facility' as an early

---

[1] (ECF No. 16 at ¶ 52; ECF No. 73 at ¶ 52).

voting site." (ECF No. 65 at 4 (citing ECF No. 24-4)). "Nor did the legislature pass other proposed bills that, among other things, explicitly identified universities and colleges as eligible early voting sites." (*Id.* at 5). The Early Vote Statute "does not *require* supervisors of elections to designate such sites. Nor does the law *prohibit* supervisors of elections from designating such sites. The law [instead] grants discretion to supervisors of elections." (*Id.* at 28) (emphasis in original).

In 2014, the City Attorney of Gainesville sought a formal opinion from the Secretary to answer: "Does the J. Wayne Reitz Union on the University of Florida campus constitute a government-owned community center or a convention center for purposes of early voting under" the Early Vote Statute? (ECF No. 24-1).

By the 2014 Opinion, the Secretary's "answer was a resounding 'no,'" (ECF No. 65 at 5). The Secretary took the opportunity to opine, not only that Reitz Union was not a permissible early voting site, but that *no* "college- or university-related facilities" could be used as early voting sites. (*Id.*; ECF No. 24-1 at 2). Specifically, the Secretary found that Reitz Union was not a proper early voting site as it "is a structure designed for, and affiliated with, a specific educational institution," *i.e.*, "[i]t is part of the University of Florida." (*Id.*)  The Secretary concluded that the Early Vote Statute "cannot be construed so broadly as to include the . . . Union *or any other college- or university-related facilities....*" (*Id.*) (emphasis added).

"Despite early voting's popularity among Florida's college students," because of the Secretary's 2014 Opinion, "no early voting site [was permitted to] exist on a college or university campus" in Florida, and "none of the nearly 830,000 students enrolled in a public university or college [were able to] vote early on campus." (ECF No. 65 at 3).

Plaintiffs, five undergraduate-student voters and graduate-researcher voter who attend or work at Florida universities ("Student Plaintiffs"), and two nonpartisan organizations whose missions include protecting the rights of Florida's young voters ("Organizational Plaintiffs"), filed this civil rights action on May 22, 2018, alleging that the 2014 Opinion violated the First, Fourteenth, and Twenty-Sixth Amendments to the U.S. Constitution. (*See* ECF No. 1; ECF No. 16). Plaintiffs sought an order declaring the Secretary's interpretation of the Early Vote Statute unconstitutional and to preliminarily and permanently enjoin the Secretary from enforcing the resulting on-campus early vote ban as set forth in the 2014 Opinion under 28 U.S.C. §§ 2201 and 2202. (*Id.*) Plaintiffs argued that with such an order discretion would be restored to the SOEs to place early voting sites on campuses.

On June 15, the Secretary filed a Motion asking the Court to abstain from exercising jurisdiction or, in the alternative, dismiss the case. (ECF No. 20). On

June 21, Plaintiffs filed a Motion for Preliminary Injunction ("PI Motion") and supporting memorandum. (ECF Nos. 22 & 36).

Plaintiffs' PI Motion was supported by ten affidavits: seven from Student Plaintiffs and one additional student voter whose right to vote had been burdened by the ban that followed from the 2014 Opinion; two on behalf of Organizational Plaintiffs whose missions had been undermined; and one by retired Leon County SOE Ion Sancho, who explained how the 2014 Opinion had impaired his ability to properly serve the community living in and around Florida State University ("FSU") during his tenure. (*See* ECF No. 33 at ¶ 10) ("[H]aving an early voting site on the FSU campus would help alleviate the disproportionate burdens on voting, including transportation issues and administrative delay, faced by the large population of voting-aged individuals who live or work on or in the immediate vicinity of the FSU Campus.").

Plaintiffs' PI Motion was further supported by three expert reports: Dr. Daniel Smith, Professor and Chair of the Political Science Department at UF, provided expert analysis of the use of early in-person voting by younger voters throughout Florida, (ECF No. 24-2); Dr. Jonathan Rodden, tenured Professor of Political Science at Stanford University and the founder and director of the Stanford Spatial Social Science Lab—a center for research and teaching with a focus on the analysis of geo-spatial data in the social sciences—provided expert

analysis concluding that voters living in dormitory-heavy areas on and around Florida's college and university campuses face disproportionately longer travel times in order to access early in-person voting as compared with voters who do not live in such areas, (ECF No. 24-9); and Dr. Peter Levine, Professor of Citizenship and Public Affairs at Tufts University and the Director of the Center for Information and Research on Civic Learning and Engagement ("CIRCLE"), devoted to studying young Americans' voting and political participation, along with two colleagues, provided expert analysis regarding the likely impact the 2014 Opinion had on youth and college student voting behavior, (ECF No. 24-16).

Plaintiffs' reply in support of the PI Motion was supported by two additional affidavits by Student Plaintiffs Megan Newsome and Jamie Roy, additional affidavits by retired SOE Sancho and Alachua County SOE Kim Barton, (*see* ECF Nos. 50-53), as well as a rebuttal report by Dr. Rodden, (*see* ECF No. 49). After the motions were fully briefed, the Court heard oral argument for several hours on July 16.

On July 24, the Court denied the Secretary's Motion to Dismiss. (ECF No. 64). That same day, the Court granted in full Plaintiffs' PI Motion in the PI Order, carefully detailing and analyzing the merits of Plaintiffs' claims. (ECF No. 65). The Court found that the Secretary's on-campus early voting ban, which followed from the 2014 Opinion, violated both the U.S. Constitution's Equal Protection

Clause and Twenty-Sixth Amendment. (*Id*. at 3). In considering Plaintiffs' claim

under the latter, the Court found:

> If a unanimous Senate, near-unanimous House of Representatives, and
> 38 ratifying states intended the Twenty-Sixth Amendment to have any
> teeth, then the Amendment must protect those blatant and
> "unnecessary burdens and barriers" on young voters' rights. This
> Court can conceive of fewer ham-handed efforts to abridge the youth
> vote than Defendant's affirmative prohibition of on-campus early
> voting.

(*Id*. at 34) (citation omitted).

On July 27, the Secretary filed a Notice of Compliance with Court's PI

Order. (ECF No. 68). Appended to the Notice of Compliance was the Secretary's

Directive 2018-01, "Early Voting Sites," (the "2018 Directive"), which further

attached the PI Order. (ECF No. 68-1). The 2018 Directive was addressed to all 67

SOEs in Florida and provided:

> In my capacity as the Chief Elections Officer of the State of Florida
> and pursuant to my authority in section 97.012(16), Florida Statutes
> (2018) and in accordance with the attached Order Granting Motion for
> Preliminary Injunction, I hereby issue this directive regarding the
> interpretation of section 101.657(1)(a), Florida Statutes (2018)
> [hereinafter, "Early Voting Statute"] set forth in Division of Elections
> Advisory Opinion 14-01.
>
> ***I advise you*** of the court's determination that the interpretation of the
> Early Voting Statute set forth in Advisory Opinion 14-01 that
> excludes from consideration as early voting sites any facilities related
> to, designed for, affiliated with, or part of a college or university, is
> unconstitutional and, accordingly, ***that you retain discretion under***
> ***the Early Voting Statute*** to place early voting sites at any city hall,
> permanent public library facility, fairground, civic center, courthouse,

county commission building, stadium, convention center, government-owned senior center, or government-owned community center, including any such site as may be related to, designed for, affiliated with, or part of a college or university. ***Based upon this directive, Advisory Opinion 14-01 is hereby rescinded***. All early voting sites must continue to satisfy the requirements of section 101.657, Florida Statutes.

***This directive remains in effect until such time as it is superseded or revoked by subsequent directive, law, or final court order***.

(*Id*. at 1) (emphases added).

Therein lies a problem of reserved intransigence, in light of the Secretary's later denials of the PI Order's core finding. On August 7, the Secretary filed an Answer to Plaintiffs' Amended Complaint, (ECF No. 73) denying Plaintiffs' allegation, which this Court had already found to be true, that "[n]othing in the text of the law, as adopted by the Legislature (or the Secretary's recommendations that precipitated the law), limited or excluded the use of facilities associated with a public educational institution, provided that they otherwise qualify as one of the types of locations that the Early Vote Statute expressly identifies as an acceptable venue for early voting." (ECF No. 16 at ¶ 53; ECF No. 73 at ¶ 53; *see also* ECF No. 65 at 4-5). In addition, and despite this Court's prior finding to the contrary, the Secretary has continued to deny that the 2014 Opinion served to bar placement of early voting sites on any college or university campus. (*See e.g.,* ECF No. 16 at ¶¶ 53-54, 59, 62; ECF No. 73 at ¶¶ 53-54, 59, 62; *see also* ECF No. 65 at 19).

Indeed, to this day, the Secretary expressly relies on the same arguments unsuccessfully raised to seek dismissal or to oppose entry of the PI Order. (*See* ECF No. 97 at 4) (stating *inter alia*, as the Secretary's ongoing bases for defense, the Secretary's Motion to Dismiss (ECF No. 20) and Response to Request for Preliminary Injunction (ECF No. 43), and its Reply in Support of Rule 12(b) Motion (ECF No. 46)).

But the interpretation of the Early Vote Statute, and the scope and impact of the 2014 Opinion, have already been thoroughly addressed and decided by this Court, which found the Secretary's "arguments regarding the limited scope of the Opinion to be disingenuous and therefore unpersuasive." (ECF No. 65 at 12 n.6 (citing ECF No. 64 at 9-10)). Instead, the Court found that nothing in the Early Vote Statute prohibited SOEs from placing early voting sites on college or university campuses, (*id*. at 4-5), but that "Florida's public college and university students [had been] *categorically prohibited* from on-campus early voting because of [the Secretary's] Opinion," (*id*. at 19) (emphasis in original).

On October 9, Plaintiffs filed a Motion to Determine Entitlement to Attorneys' Fees, Expert Fees, and Litigation Expenses and Incorporated Memorandum of Law ("Fee Petition"), arguing that because the Court had awarded Plaintiffs their requested preliminary relief in full and on the merits of their constitutional claims, which were brought pursuant to 42 U.S.C. § 1983

("Section 1983"), Plaintiffs are prevailing parties under 42 U.S.C. § 1988 ("Section 1988") and, as such, are entitled to their reasonable attorneys' fees, expert fees, and litigation expenses incurred in pursuit of that relief. (ECF No. 79).

On October 30, the Secretary filed her Response in Opposition to that motion, essentially arguing that Plaintiffs' Fee Petition was premature ***and might be eventually undone***, because the Secretary asserted that discovery and a full trial on the merits might result in this Court finding that "the 2014 Advisory Opinion did *not* impose a prohibition on on-campus early voting sites." (ECF No. 84 at 6-7) (emphasis in original). The next day, the Court ordered Plaintiffs to file a reply in support of Plaintiffs' Fee Petition, (ECF No. 85), which Plaintiffs filed on November 12. (ECF No. 86).

On January 22, 2019, the Court ordered the parties "to file supplemental briefs to this Court explaining whether or not[] the Secretary's [2018 Directive] moots the issues in this dispute." (ECF No. 91).

The Secretary plainly viewed the 2018 Directive, which involuntarily rescinded the 2014 Opinion, deficient to moot this case. This is evident by the fact that after 5:00 p.m. on February 15, the deadline the Court had set for the parties to file their supplemental briefs on the question of mootness, the Secretary issued the 2019 Directive (ECF No. 98-1), providing in part that:

Through this directive, I hereby make the following clarification: Section 101.657(l)(a) of the Florida Statutes states that supervisors may designate "any city hall, permanent public library facility, fairground, civic center, courthouse, county commission building, stadium, convention center, government-owned senior center, or government-owned community center as early voting sites" where the sites are "geographically located so as to provide all voters in the county an equal opportunity to cast a ballot, insofar as is practicable." The plain text of the statute does not prohibit supervisors from placing early voting sites on college and university campuses. Of course, under the statute, supervisors also remain free to use college and university campuses *to "designate one early voting site per election* in an area of the county that does not have any of the eligible early voting locations" so long as it is "geographically located so as to provide all voters in that area with an equal opportunity to cast a ballot, insofar as is practicable." § ·101.657(l)(a), Fla. Stat. Accordingly, it is the position of this Office that early voting sites may be located on college and university campuses *where the requirements of section 101.657(1)(a) of the Florida Statutes are met*.

(*Id*. ¶ 5) (emphasis added). Notably left unsaid in the 2019 Directive is that statute's "plain text" is the same text that the 2014 Opinion purported to construe, and the 2014 Opinion was issued in response to a specific question about on-campus site suitability for early voting.

The 2019 Directive also does not indicate that the Secretary has changed her mind and would now find that the Reitz Union – where nearly 8,000 Florida voters were able to cast early ballots in November directly as a result of the PI Order – qualifies as a site "where the requirements of section 101.657(1)(a) . . . are met." To the contrary - it appears to endorse it. (*See* ECF No. 98-1 ¶ 3). If that is in fact the case, not only would the immediate result be decreased access for students of

UF, but likely all of the ten other campuses where early voting was offered for the first time because of the PI Order, given that many of those SOEs chose to use similar types of community centers on their campuses. (ECF No. 86 at 3). Thus, rather than put the question that gave rise to this litigation to rest, the 2019 Directive only begs the question of whether the Secretary continues to "construe" the law in a way that makes it virtually impossible (or at the very least very difficult) for SOEs to offer meaningful access to early voting for Florida's student voter population.

On February 15, moreover, in the Parties' Rule 26(f) Report (Doc. 97 at 4) – which was filed on *the very same day* that the Secretary filed her brief asserting that the matter was now moot – the Secretary reiterated the exact same raft of defenses that she has relied upon from the outset of this litigation, further demonstrating that she has not in fact changed her legal position one iota. Moreover, in conferring about the instant motion, the Secretary's counsel advised the undersigned that the Secretary would oppose the conversion of the PI Order into one for a permanent injunction. This position is, at best, internally inconsistent, and is plainly at odds with the record. Because there remain no disputed issues of material fact that would require the parties' proceeding to trial, and because the Secretary continues to decline to take a clear, legally binding position that would protect Florida's young voter population from the exact same

type of discriminatory conduct, the Court can and should enter a declaratory judgment in favor of Plaintiffs and convert the PI Order into a permanent injunction.

## III.   ARGUMENT

Given this Court's factual and legal findings in the PI Order, and the parties' comprehensive legal and factual briefings of the substantive issues, and because no material facts remain in dispute, the Court should convert its PI Order into a final judgment and permanent injunction, pursuant to its authority under 28 U.S.C. §2202.

### A.   Conversion of a preliminary injunction to a permanent injunction, where no material factual disputes remain, is appropriate.

According to the Secretary, the *only* issue that she hopes will be resolved through full discovery and a trial on the merits is whether the 2014 Opinion actually prohibited SOEs from placing early voting sites on campuses. Specifically, in recent filings with the Court, the Secretary asserted:

> After discovery and a trial on the merits, and consistent with the arguments previously presented by counsel, the Secretary hopes to convince this Court, sitting as the trier-of-fact, that the [Secretary's 2014] Opinion did *not* impose a prohibition on on-campus early voting sites. The Secretary expects the evidence to show that the 2014 Advisory Opinion was, as its name implies, advisory; the 2014 Advisory Opinion answered only a narrow question; the past reluctance of local supervisors of elections to place early voting sites on-campus could have stemmed from issues as simple as parking spaces, the scheduling of home football games on the Saturday before the General Election, or the close proximity of an existing early voting

- 18 -

site to campus.

(ECF No. 84 at 6-7) (internal marks omitted). Because this question of law and fact has already been fully and thoroughly addressed by this Court, which rejected the Secretary's assertion that the 2014 Opinion only applied to the Reitz Union as entirely disingenuous (*see* ECF No. 65 at 12, n.6, 19 ("Florida's public college and university students are *categorically prohibited* from on-campus early voting because of Defendant's Opinion."); ECF No. 64 at 9-10), and because the permanent relief Plaintiffs seek is of the same form awarded in the PI Order, no amount of discovery will change the merits-based outcome of the Court's PI Order, such that all material issues of fact have been resolved.

"Normally, an evidentiary hearing is required before an injunction may be granted." *United States v. McGee*, 714 F.2d 607, 613 (6th Cir. 1983). "It has been held, however, that such a hearing is not necessary where no triable issues of fact are involved." *Id.* (citing *Socialist Workers Party v. Ill. State Bd. of Elections,* 566 F.2d 586 (7th Cir.1977), *aff'd on other grounds,* 440 U.S. 173 (1979); *United States v. Byrd,* 609 F.2d 1204, 1208–09 (7th Cir.1979)); *see also Pictet Overseas, Inc. v. Helvetia Tr.*, No. 13-81088-CIV, 2014 WL 12767372, at *9 (S.D. Fla. Jan. 2, 2014) (granting preliminary and permanent injunction on same motion and noting "an evidentiary hearing on a permanent injunction may be unnecessary if 'no triable issues of fact are involved'") (citations omitted), *report and*

- 19 -

*recommendation adopted in part*, No. 13-81088-CIV, 2014 WL 12760408 (S.D. Fla. Feb. 7, 2014); *Citibank (S. Dakota) N.A. v. Nat'l Arb. Council, Inc.*, No. 3:04-CV-1076-J-32-MCR, 2006 WL 2691528, at *4, 8 (M.D. Fla. Sept. 19, 2006) (converting preliminary injunction to a permanent injunction on plaintiffs' motion for summary judgment); *United States v. Prater*, No. 8:02-CV-2052-T-23MSS, 2005 WL 2715401, at *5 (M.D. Fla. Sept. 23, 2005) (same).

In *Socialist Workers Party v. Illinois State Bd. of Elections*, the Seventh Circuit upheld a permanent injunction against enforcement of a Chicago elections statute, even though the defendants had not been given an evidentiary hearing on the matter, reasoning as follows:

> No purpose would have been served by holding an evidentiary hearing in this case. There was no factual dispute as to the ground on which the injunction was ordered. The district court permitted appellants to file an offer of proof outlining facts they would present if a hearing were granted. We find nothing in this offer of proof which, if proved, would have altered the result; indeed, it has not been demonstrated that anything that could have arisen in a factual hearing would have altered the result. The absence of such a hearing, therefore, does not constitute a ground for reversal.[2]

Here, the Secretary has indicated that the only issue in dispute is the scope, meaning and impact of the Secretary's 2014 Opinion, but the parties have been heard on that issue, after comprehensive briefing, and this Court conclusively

---

[2] 566 F.2d at 587 (citing *Hagopian v. Knowlton*, 470 F.2d 201, 207 (2d Cir. 1972); *SEC v. Frank*, 388 F.2d 486, 490 (2d Cir. 1968)).

found that the Opinion served as an unconstitutional effort to discriminate against young voters by banning on-campus early voting throughout the State – thereby fully rejecting the Secretary's argument to the contrary on the merits. (*See* ECF No. 65 at 12 n.6; ECF No. 64 at 9-10).

The Secretary rescinded the 2014 Opinion pursuant to the PI Order, such that, while this case proceeds and absent any further "interpretations" of the statute by the Secretary as to the propriety of specific on-campus locations as early voting sites, SOEs throughout Florida are presently free to exercise their discretion in deciding whether and where to place early voting sites on campuses and universities within their counties. To wit, several SOEs so exercised their discretion and did place early voting locations on 11 college and university campuses during the 2018 midterm elections, where nearly 60,000 ballots were ultimately cast. (*See* ECF No. 79 at 6-8; ECF No. 86 at 2-8).

In *United States v. McGee*, where the sole issue was the applicability of a statute, the Sixth Circuit held that "the need for an evidentiary hearing in the present case is obviated due to the nature of the issues involved. The main issue . . . is a purely legal question that obviously does not require an evidentiary hearing. . . We, therefore, hold that the district court did not err in granting the injunction without affording defendants an evidentiary hearing." 714 F.2d at 613.

Here, the Court noted that the Secretary's 2014 Opinion amounted to "a state officer's interpretation of state law—an interpretation that has the effective force of a state law or policy," which the Court was entitled to review upon the allegation that the official interpretation, which had the effect of law, was in violation of the U.S. Constitution. (ECF No. 65 at 10). In analyzing and interpreting the 2014 Opinion, this Court flatly rejected the Secretary's contention of her contrary intent in issuing it, namely that it applied only to the Reitz Union and did not amount to a statewide ban on on-campus early voting, as plainly "disingenuous." (*Id*. at 12 n.6, 19 (finding the 2014 Opinion categorically banned on-campus early voting sites); ECF No. 64 at 9-10).   Because this Court has already interpreted the 2014 Opinion and rejected the exact same arguments that the Secretary continues to pursue – arguments that cannot be bolstered by any factual discovery – like the statute at issue in *McGee*, an evidentiary hearing on the 2014 Opinion's meaning and scope is needless.

As no triable issue of fact remains unresolved, conversion of the PI Order to a permanent injunction is appropriate.

**B.    The PI Order was issued after extensive legal and evidentiary briefing and oral argument, and any further legal briefing and evidentiary hearings would be fruitless.**

Where "the court has received extensive oral argument and documentary evidence in connection with the motion for preliminary injunction," a case is ripe

for permanent injunction. *United States v. Bell*, No. 1:CV-01-2159, 93 A.F.T.R.2d 2004-753 (M.D. Pa. Jan. 29, 2004). This is particularly true where the non-moving party cannot "identify a single issue of *fact* that stands to be resolved," and instead "simply disagrees with the legal conclusions of the preliminary injunction memorandum and order." *Id.* (emphasis in original).

Here, the parties briefed the issues extensively, Plaintiffs proffered reams of evidence as to the issues and, in particular, the impact of the 2014 Opinion on Plaintiffs and student voters throughout Florida – which the Court carefully analyzed and considered – and the Court heard more than two hours of oral argument. After considering all the facts and legal arguments both sides presented, this Court issued a ruling fully determining the salient legal issues. (*See generally* ECF No. 65). Tellingly, in opposing Plaintiffs' Fee Petition based on her contention that discovery and a hearing are still necessary and may change the outcome, the Secretary failed to point to a single factual issue that remains unresolved, instead disagreeing only with the Court's conclusions in its PI Order. *See supra*, III(A). No amount of further briefing or evidentiary proceedings will change the outcome here; conversion of the PI Order to a permanent injunction is thus appropriate.

**C.    A proper permanent injunction, based on the PI Order's findings, will dispose of all Plaintiffs' claims, save an award of fees.**

This Court's PI Order, with its findings of fact and conclusions of law, presently covers the full scope of relief that Plaintiffs seek in this action.  Pursuant to the PI Order, the Secretary issued the 2018 Directive, which acknowledged the unconstitutionality of the Secretary's interpretation of the statute to the detriment of Florida's young voters. The immediate result was that SOEs opened early voting cites on 11 college and university campuses – including one in the Reitz Union on UF's campus. Faced with the PI Order, the Secretary has not shown any triable issue and cannot legitimately deny the bases on which the Court compelled the Secretary to issue the 2018 Directive, which secures equal voting rights of young voters on college and university campuses. It is therefore appropriate for the Court to enter a final judgment enjoining the Secretary from rescinding the 2018 Directive, and finally declaring that the 2014 Opinion reflects an unconstitutional ban on on-campus early voting because it clearly discriminated against Florida's young voters, as provided in the PI Order.

**D.    This case is not moot**.

Absent a final judgment, serious problems are likely to linger.  First, despite the PI Order, the Secretary refuses to acknowledge the 2014 Opinion was unconstitutional at all, much less an unconstitutional ban on on-campus early

voting. Second, the 2018 Directive states, "This directive remains in effect *until such time as it is superseded or revoked by subsequent directive, law, or final court order*," (ECF No. 68-1 (emphasis added)), and the 2019 Directive both studiously avoids acknowledging that interpreting the early vote statute in a manner that discriminates against Florida's young voters is unconstitutional, or even walking back the Secretary's assertion that Reitz Union is itself not an appropriate early voting site – a fact that on its own is likely to have a significant chilling effect on placement of on-campus early voting sites, if not an explicit one when the Secretary is once again invited to opine on the same question. Further, notwithstanding *either* the 2018 or 2019 Directives, the Secretary continues to act as if the Opinion was simply misunderstood or the SOEs could (or should) have unilaterally decided not to put early voting sites on college campuses (though where exactly the Secretary would approve of them being placed remains conspicuously and glaringly unclear).

Thus, while the Secretary may very well – and, indeed, in the 2019 Directive *explicitly* does, (*see* ECF No. 98-1 (stating the directive was being issued "to clarify any *misunderstandings* . . . .") (emphasis added) – maintain that this was all just an unfortunate misunderstanding, the problem remains that, over and over, and despite multiple express invitations to do so, the Secretary obstinately refuses to provide any clear direction that would eliminate the risk that young voters are

subject to continued discrimination in access to early voting in Florida (discrimination that, to be clear, the Court found was the purpose of the Secretary's actions). (*See* ECF No. 65 at 31). This was clear when the Secretary first issued the 2014 Opinion and refused to provide clarification as to its true reach, (ECF No. 36 at 8-9); it was clear in the Secretary's briefing on its motion to dismiss, (ECF No. 42 at 17-18); it was clear in its opposition to the PI Motion, (ECF No. 47 at 4 n.3); it was clear when the Secretary's counsel declined to give clarification even during direct questioning by the Court in this case, (ECF No. 62 at 46:1-54:20); and it remains clear in the 2019 Directive just issued by the Secretary in an attempt to moot this action and avoid final judgment on the merits.

Further, even *after* SOEs rushed to provide early voting on 11 college campuses after the Secretary issued the 2018 Directive, the Secretary obtusely denied the Opinion's obvious influence on the SOEs. (*See* ECF No. 84 at 6-7) (arguing, on October 30, in opposition to Plaintiffs' fee motion, that "the past reluctance of local supervisors of elections to place early voting sites on-campus could have stemmed from issues as simple as parking spaces, the scheduling of home football games on the Saturday before the General Election, or the close proximity of an existing early voting site to campus"). Less than four months ago, in opposition to the Plaintiffs' fee motion, the Secretary implied this case was not moot, by arguing that Plaintiffs' fee petition was premature and might be

eventually undone. (*Id*. at 6-7). Finally, the 2019 Directive, rather than provide clarity to SOEs, is just as likely to raise questions as to whether the early voting that took place on college campuses following the PI Order was proper, or if similar designations in the future could rouse the Secretary's enforcement powers. (ECF No. 98-1).

"Voluntary cessation of challenged conduct will only moot a claim when there is no 'reasonable expectation' that the accused litigant will resume the conduct after the lawsuit is dismissed." *Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. of Ga.*, 633 F.3d 1297, 1309 (11th Cir. 2011) (citation omitted). A government actor has an "initial 'heavy' burden . . . to show that it is *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." *Doe v. Wooten*, 747 F.3d 1317, 1322 (11th Cir. 2014) (citing *Harrell v. Fla. Bar*., 608 F.3d 1241, 1268 (11th Cir. 2010)) (emphasis in original). Otherwise, a government actor is not entitled to any leeway or presumption of mootness by ceasing illegal activity. *Id*. at 1323.

Three factors are relevant to this mootness inquiry: (1) "whether the termination of the offending conduct was 'unambiguous'"; (2) "whether the change in government policy or conduct appears to be the result of substantial deliberation, or is simply an attempt to manipulate jurisdiction"; and (3) "whether the government has 'consistently applied' a new policy or adhered to a new course

of conduct." *Id*. None are met here, nor has the Secretary meaningfully tried to address this standard.[3]

### 1. The chilling conduct has not unambiguously ceased.

Timing and content help determine whether a defendant's claimed termination of challenged conduct is sufficiently unambiguous. *Harrell*, 608 F.3d at 1266. The repeal of a challenged statue is an example of absolutely clear cessation, but decisions that may be temporary, are not coupled with a clear commitment not to recur, and could change for any number of reasons, such as wavering political will or disputes as to liability, are rightly discounted. *See Wooten*, 747 F.2d at 1324; *Nat'l Ass'n of Bds. of Pharmacy*, 633 F.3d at 1310-11.

Here, the 2019 Directive is not unambiguous. While noting that the "[t]he plain text of the [early voting] statute does not prohibit supervisors from placing early voting sites on college and university campuses," the Directive is premised on an supposed "misunderstanding" of SOEs, does not clearly reject the rationale of the 2014 Opinion, and does not give any indication that any of the campus early

---

[3] The one recent opinion that the Secretary cites to claim mootness involved a challenge to an executive order that was rescinded and replaced by a new executive order under which the plaintiff (a legal permanent resident, or LPR) no longer faced any potential deprivation. *See Tawfeeq v. Duke*, 309 F.Supp.2d 1350, 1353 (N.D. Ga. 2017) (finding new executive order "expressly excludes LPRs from the ban"). That is not this case.

voting that following the PI Order was proper in the 2018 general election or permissible in the future.

To the contrary, it appears to double down on the assertion made in the 2014 Opinion that the Reitz Union "does not constitute a 'government-owned community center' or 'convention center' for purposes of early voting under section 101.657." (ECF No. 98-1). For reasons discussed, this continued intransigence on the Secretary's part is both factually and constitutionally problematic. It appears to seek to perpetuate the harms of the 2014 Opinion, but in a more subtle fashion. Rather than ham-handedly asserting that early voting may not occur in any facility associated with an educational facility, it embraces that Opinion's conclusion – which was reached without any explanation and was publicly criticized as baseless, illogical and discriminatory when it was issued, (ECF No. 36 at 8-9) – that the Reitz Union cannot legally be used for early voting under Florida law, thereby implying (and this point is not so subtle) that likely *none* of the sites used in November 2018 would be deemed permissible by the Secretary. But the Secretary obviously cannot constitutionally achieve her discriminatory means by simply switching to a (slightly) less obvious tactic. The continued (and it seems, deliberate) ambiguity of the Secretary's position prohibits a finding that this matter is moot.

**2.   The timing and content of the 2019 Directive is highly suspect.**

Timing and content are also "critical in determining the motive for the cessation and therefore whether there is any reasonable expectation . . . that the alleged violation will recur." *Harrell*, 608 F.3d at 1266. "[L]ate in the game" changes, unlike voluntary cessation before legal challenge, urge more skepticism of whether voluntary changes have been made. *Id*. As to content, courts look "for a well-reasoned justification for the cessation as evidence that the ceasing party intends to hold steady in its revised (and presumably unobjectionable) course," such as a recognition of controlling precedent. *Id*. (distinguishing doubtful reliance on non-binding precedent). And a decision made in a secret or irregular manner that might reflect a range of possible judgments, some of which would not warrant a finding of mootness, weighs against finding mootness.  *Id*. at 1266-68.

Here, the 2019 Directive, alone or in conjunction with the Secretary's filings, is deficient in several timing- and content-wise respects. First, it is a late-game decision – indeed, issued in the evening of the Court's designated deadline to brief the issue mootness – that appears to have been designed, albeit with tactical ambiguity, to moot the case to avoid a final judgment. Second, it does not explain nor reject the rationale of the unconstitutional policy reflected in the 2014 Opinion; in fact, it observes that the 2014 Opinion's scope and effect remain at issue in the instant case. (ECF No. 98-1 § 4). Also, it reflects that the Secretary may still

contend that the type of early voting that occurred in the 2018 General Election is not proper (*See id.* § 5), and the Secretary continues to dispute liability (ECF No. 97 at 4). Finally, although it is certainly within the Secretary's right to issue such a directive without consulting Plaintiffs in this matter, the fact that the Secretary did not even advise, much less attempt to consult, Plaintiffs before issuing the Directive, including to obtain their view as to whether it effectively resolves the outstanding issues in this case, provides further reason for finding that it was an entirely tactical decision meant to extricate the Secretary from the Court's jurisdiction on this crucially important question.

### 3. The Secretary's conduct is not consistent or unobjectionable.

Finally, courts consider mootness in light of the consistency and duration with which a new (unobjectionable) policy has been applied. *See Nat'l Ass'n of Bds. of Pharmacy*, 633 F.3d at 1310. Here, the late-game and equivocal nature of the 2019 Directive provides no new track record to consider, and portends many opportunities for chilling inconsistency.

On this record, the Secretary has failed to meet her initial heavy burden to show it is absolutely clear that her agency's established unconstitutional behavior will not recur. The trouble is, and remains, that the Secretary views the PI Order as mistaken, views the 2018 Directive as dispensable, and apparently views the 2019 Directive as a convenient means to both end this case while leaving open the door

(and several windows) for discrimination of exactly the same ilk that this Court found in the PI Order to be unconstitutional. None of this bodes well for avoiding the real chill on – and likely direct injury to – voting rights associated with the Secretary's conduct and ongoing denials.[4]  Accordingly, this case is not moot.

## IV.   CONCLUSION

For the reasons discussed herein, Plaintiffs respectfully request that the Court enter final declaratory judgment in favor of Plaintiffs and convert its PI Order (ECF No. 65) to a permanent injunction.

---

[4] On the issue of fees and costs, Plaintiffs note that the Secretary has effectively conceded that a finding of mootness here would entitle Plaintiffs to costs and fees. (*See* ECF No. 84 at 5) (quoting *Common Cause/Georgia v. Billups,* 554 F.3d 1340 (11th Cir. 2009)). In *Common Cause*, the district court entered a preliminary injunction finding Georgia's photo ID law amounted to a poll tax. 554 F.3d at 1347. While on appeal, Georgia's General Assembly repealed the challenged statute and enacted a different photo ID law that did not impose the same poll tax. *Id.* After that decisive and deliberate repeal and further proceedings, the district court ultimately dismissed plaintiffs' claims. *Id.* at 1348. The court, however, found that plaintiffs were prevailing parties on the preliminary injunction of the since-repealed statute and were therefore entitled to fees and costs incurred in furtherance of same, which the 11th Circuit affirmed. *Id.* at 1349.  If the Secretary somehow meets the heavy burden of establishing mootness, after involuntarily rescinding the Secretary's Opinion, Plaintiffs remain entitled to fees and costs and would request the opportunity to supplement their briefing in that regard.

**LOCAL RULE 7.1 CERTIFICATE OF GOOD FAITH CONFERENCE**

Pursuant to Local Rule 7.1(B)-(C), counsel for Plaintiffs have conferred in good faith with the Secretary prior to filing this motion, and Counsel for the Secretary has confirmed that this motion is opposed.

**LOCAL RULE 7.1(F) CERTIFICATION**

Counsel for Plaintiffs, Fritz Wermuth, Esquire, certifies that this motion contains 7,930 words.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 22, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

By: <u>Frederick S. Wermuth</u>
Florida Bar No.: 0184111
KING, BLACKWELL, ZEHNDER &
WERMUTH, P.A.
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472
Facsimile: (407) 648-0161
fwermuth@kbzwlaw.com

Marc E. Elias
Elisabeth C. Frost*
Amanda Callais*
Jacki L. Anderson*
John M. Geise*
Alexi M. Velez*
PERKINS COIE LLP

700 Thirteenth St., N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-9959
melias@perkinscoie.com
efrost@perkinscoie.com
acallais@perkinscoie.com
jackianderson@perkinscoie.com
jgeise@perkinscoie.com
avelez@perkinscoie.com

*Counsel for Plaintiffs*
 *\*Admitted Pro Hac Vice*