UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

LEAGUE OF WOMEN VOTERS OF FLORIDA,
INC., THE ANDREW GOODMAN
FOUNDATION, INC., MEGAN NEWSOME,
AMOL JETHEWANI, MARY ROY a/k/a
JAMIE ROY, DILLON BOATNER,
ALEXANDER ADAMS, and ANJA RMUS,

        Plaintiffs,

v.

LAUREL M. LEE in her official capacity
as the Florida Secretary of State,

        Defendant.

Case No. 4:18-cv-00251 (MW/CAS)

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PERMANENT INJUNCTION (ECF NO. 102)

Plaintiffs, pursuant to Local Rule 56.1(D), file this reply in support of their Motion for Permanent Injunction (ECF No. 102) and state the following bases to reject the opposing Response (ECF No. 104) of Defendant (the "Secretary"):

### I. INTRODUCTION AND BACKGROUND

Plaintiffs welcome and consider it an incremental victory that the Secretary conceded the obvious in her 2019 Directive[1]: that "[t]he plain text of the [Early Voting] statute does not prohibit supervisors from placing early voting sites on college and university campuses." (ECF No. 98-1, § 5). Yet, like her Response, that tactical concession – an eleventh-hour bid for mootness – misses the mark, and is most notable for the Secretary's failure to acknowledge that textual fact sooner.

---

[1] Capitalized terms have the same meaning as defined in Plaintiffs' Motion (ECF No. 102).

The Secretary's belated concession does not moot this case, because the aim of Plaintiffs is not a declaration of that obvious textual fact. Plaintiffs' aim is to enjoin the Secretary from using the Early Voting Statute to unconstitutionally abridge or deny the franchise to Florida's young voters – as this Court in its order granting Plaintiffs' motion for a preliminary injunction ("PI Order") found the Secretary has done; indeed, as this Court acknowledged before, Plaintiffs seek to enjoin the Secretary "from prohibiting county supervisors of elections [SOEs] from placing early voting sites on college or university campuses." (ECF No. 65 at 15).

The 2014 Opinion effectuated such vote suppression in two ways. One was by stating that the J. Wayne Reitz ("Reitz") Union could not be used for early voting because it was affiliated with an educational institution. The Secretary has withdrawn only *that* rationale, leaving the 2014 Opinion's alternate means for such vote suppression in place. If anything, the 2019 Directive *reembraces* the 2014 Opinion's wholly unsupported conclusion that early voting could not be held at the Reitz Union, ostensibly because it does not qualify as one of the types of facilities expressly authorized for early voting by the statute. That position justly met immediate criticism for being baseless and discriminatory when the 2014 Opinion first issued; yet, when asked to explain it, the Secretary refused, stating instead through a spokesperson that the opinion speaks for itself. (ECF No. 36 at 8-9, 32).

To this day, despite being found in the PI Order to have unconstitutionally targeted the franchise of young voters, the Secretary blithely denies any such purpose. At the same time, she refuses to either cogently explain or withdraw the 2014 Opinion's alternate rationale prohibiting early voting at Reitz Union, which is only explainable as a way to make it harder for young people to vote in Florida. This is particularly troubling at this juncture, where – as a direct result of the Court's PI Order – early voting was offered for the first time at Reitz Union and several similar locations on Florida's college and university campuses.

Thus, by her 2019 Directive, the Secretary casts doubt on the propriety of using those sites in coming elections. And, continuing a pattern of sowing confusion in this area, the Secretary refuses to make clear that she does not intend to curb placing early voting sites by those very means. Given the particular history of the Secretary's directives on this very point, the Court should not give the Secretary the benefit of the doubt here; instead, it should issue a permanent injunction that clearly protects young voters from the discrimination that it found to be unconstitutional in its PI Order.

To be clear, Plaintiffs are not asking the Court to issue an injunction requiring the Secretary to comply with the Early Voting Statute's plain text – an argument the Secretary made at the threshold of this case, and that the Court rejected (ECF No. 65 at 9-10). Rather, Plaintiffs ask the Court to permanently

prohibit the Secretary from continuing to wield the Early Voting Statute as a way to suppress the franchise of young voters in Florida.

The Secretary's tactical concession falls well short of making it absolutely clear that such efforts could not reasonably be expected to recur. Indeed, evincing the contrary, the Secretary clings to her position that the 2014 Opinion was exceedingly narrow and, thus, presumably proper. (*Id*. at 14 n.7) (noting her counsel's repeated attempts to narrow the 2014 Opinion's scope as merely interpretations of "convention center" and "government-owned community center"). In fact, she contends in the 2019 Directive that: (1) the 2014 Opinion narrowly found "The J. Wayne Reitz Union on the University of Florida campus does not constitute a 'government-owned community center' or 'convention center' for purposes of early voting under [the Early Voting statute]" and (2) the 2014 Opinion's "scope and effect *remain at issue* in [this case]." (ECF No. 98-1, §§ 3-4) (emphasis added). Thus, the Secretary's suppressive policy remains live, albeit with no genuine issue of material fact, such that a judgment and permanent injunctive relief in Plaintiffs' favor is justified, consistent with the PI Order.

## II. LEGAL ANALYSIS

In her Response, the Secretary asserts two general arguments in opposition to Plaintiffs' Motion: first, that the case is moot because the 2019 Directive is "clear" and further relief would violate the *Pennhurst* doctrine; and, second, that

Plaintiffs must show more for a permanent injunction than the undisputed evidence supporting the PI Order, despite the Secretary's failure to show a genuine issue of material fact.  Neither argument holds sway.

### A. The Case is Not Moot, Nor Fully Resolved.

In the PI Order, the Court properly rejected the Secretary's (now-rehashed) argument that relief in this case would violate the *Pennhurst* doctrine:

> Simply stated, a federal court can review a state official's interpretation of—or gloss over—state law when it is alleged to violate the United States Constitution.  Otherwise, state legislatures could pass ambiguous statutes, giving cover for state officers to interpret vague laws in manners contrary to the U.S. Constitution.  Barred in federal courts, challenges to these interpretations in state court could then fade under state courts' deference to state interpretations of state law.

(ECF No. 65 at 10-11).  In arguing mootness and the *Pennhurst* doctrine, the Secretary wants a pass to continue wielding a similar means of vote suppression, after being found to have targeted the franchise of young voters. (*Id*. at 31).

The Secretary understandably would prefer to end this case and wash away the PI Order by the simple expedient of declaring the obvious textual absence of any bar to on-campus early voting in the Early Voting Statute. Yet that textual fact has never properly been in dispute, nor the crux of this case. The issue that remains, in effect, is whether it is enough to moot a case for a government actor to disavow one objectionable position while clinging to another.

By well-settled rule, the answer is no. It is not only the possibility that the "*selfsame*" statute or policy will be reinstated that prevents a case from being moot; "if that were the rule, a defendant could moot a case by repealing the challenged statute and replacing it with one that differs only in some insignificant respect." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 (1993) (finding repeal and replacement of one objectionable ordinance with another did not moot the case).

Even *complete* "voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). That is because, if voluntary cessation of a practice automatically mooted an issue, "'courts would be compelled to leave [t]he defendant ... free to return to his old ways.'" *Id.* (quoting *City of Mesquite*, 455 U.S. at 289, n.10).

Therefore, the test "for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: 'A case might become moot if subsequent events made it *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id.* (emphasis added) (quoting *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968)). "The 'heavy burden of persua[ding]' the court that the challenged conduct cannot

reasonably be expected to start up again lies with the party asserting mootness." *Id.* (citation omitted). Thus, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is *absolutely clear* the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* at 190 (emphasis added) (citation omitted).

Here, as an initial matter, the Secretary has not even completely withdrawn the unconstitutional opinion that gave rise to this action. To the contrary, the 2019 Directive upholds the same conclusion set forth in the 2014 Opinion that the Reitz Union – and presumably all such student unions (where many on campus early voting locations were placed during the 2018 election as a result of the PI Order) – may not be properly utilized for early voting in Florida. That is significant because, as this Court found:

> According to the undisputed declarations of Ion Sancho, who served as Leon County's Supervisor of Election for 27 years, the Florida State Association of Supervisors of Elections "and Florida's Supervisors of Election[s] generally treat written opinions of the Division . . . as authoritative and follow such opinions, absent contrary directive by a court, by statute, or by the Secretary of State." Supervisors of elections "give broad and substantial deference" to such opinions. They do not act contrary to the opinions because, as a practical matter, "it takes enough effort to administer elections without adding controversy"—such as acting, or being perceived to act, inconsistent with the Secretary's opinion. Even more, the Secretary of State sends copies of opinions to supervisors of elections, which "do not contain qualifying language to suggest the advisory opinions are narrowly limited in their application." Therefore, the supervisors reasonably understand the state's chief election officer's

> opinions as how he "interpret[s] and [is] likely to enforce Florida's election laws." That all supervisors of elections follow Defendant's opinions is no surprise.

(ECF No. 65 at 12-13) (citation omitted). Further, the Secretary has not ever cogently explained how the Reitz Union does not qualify as a "convention center" or "government owned community center" (or a "civic center" for that matter, Fla. Stat. § 101.657(1)(a)), so as to prohibit its use for early voting. As with the rest of the Secretary's assertions in the 2014 Opinion that gave rise to this litigation, the only plausible explanation for this otherwise unsupportable position is an unconstitutional discriminatory motivation. (ECF No. 65 at 31).

Thus, the Secretary's position that Plaintiffs have a burden to overcome some deferential presumption that the 2019 Directive moots this case is simply not well-founded. All that is clear about the 2019 Directive is that it offers a limited concession, wrapped in denial and ongoing dispute of this Court's findings, and upholds a baseless view of the Reitz Union. The only deference relevant here is the undisputed proof that SOEs broadly defer to (and are chilled by) such advisory opinions, and opt not to risk crossing the Secretary's interpretations in preparing to administer elections.

No presumption or deference for the Secretary is appropriate here, because she has failed to make "absolutely clear" that the same behavior could not reasonably be expected to recur. The foregoing proof stands undisputed and to the

- 8 -

contrary. Moreover, the view of the Reitz Union reaffirmed in the 2019 Directive is part and parcel of the 2014 Opinion, which this Court found tainted with impermissible intent. (ECF No. 65 at 31) (finding that "[s]imply put, Defendant's Opinion reveals a stark pattern of discrimination"). Such proven misdeeds are grounds to hold perpetrators to strict proof, not give them deference. *See, e.g., Bd. of Trs. of Glazing Health and Welfare Tr. v. Chambers*, 903 F.3d 829, 843 (9th Cir. 2018) (finding that "where a government entity acts under compulsion of a judicial decree rather than its own initiative, the risk of legislative recidivism is acute once the judicial obstacle to legislative action is removed"); *cf. League of Women Voters of Fla. v. Detzner*, 172 So. 3d 363, 400 (Fla. 2015) (holding that once a constitutional violation is found, "there is no basis to continue to afford deference to the Legislature" in remedial-phase review).

The Secretary mistakenly relies on *Doe v. Wooten*, 747 F.3d 1317 (11th Cir. 2014), as applying a presumption of mootness. There, before abated conduct was even found to violate the law, the Eleventh Circuit **refused** to presume that abatement mooted the case; instead, it emphasized that such a presumption arises "only *after* [the government] has shown unambiguous termination of the complained of activity," by a rigorous standard. *Id*. at 1322 (emphasis in original). Unlike legislation, policies such as the 2014 Opinion may be reinstated, in whole or part, at will – as the 2019 Directive proves – and do not share the same gravitas

as a statutory repeal. *Id.* at 1324 (finding change in conduct failed to moot case, in part, because conduct could change back for various reasons such as "political will"); *cf. Chambers*, 903 F.3d at 843 (finding statutory repeal ineffective to moot case, because a voluntary cessation in response to an adverse judicial ruling generally defeats mootness on appeal "unless the government can show with 'certainty' that reenacting a repealed or revised law will 'not be pursued'").

Rather than clarity, much less certainty, that invidious vote suppression has permanently ceased (according to her, it never occurred), the Secretary has offered her ongoing disagreement with the Court's PI Order, as part of the 2019 Directive that portends more of the same. A jurisdictional mootness decision would unjustifiably leave Florida's young voters to wait out another election cycle to see, likely too late, if the SOEs shy again from placing early voting in exactly the types of places that the Secretary appears committed to opposing as early voting sites without any supportable or logical basis. A declaratory judgment is appropriate to avoid that, and any further repetition should require no more that returning to this Court to address a violation of its injunction. Plaintiffs have gone to too much effort to be left facing a do-over, and the Secretary's 2019 Directive is not an adequate legal basis to leave that prospect. This case is not moot.

### B. A Permanent Injunction and Declaratory Judgment are Proper, Based on the Undisputed Facts Supporting the PI Motion.

The Secretary does not dispute that the summary judgment standard applies in assessing whether to convert preliminary injunction to permanent injunctive relief before trial. (ECF No. 104 at 6). Yet, the Secretary fails to make any showing that would justify denying Plaintiffs' motion and having this matter proceed to further discovery and trial.

Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). This burden is satisfied where the moving party demonstrates that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party must come forward with "significant, probative evidence demonstrating the existence of a triable issue of fact." *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Celotex*, 477 U.S. at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without

specific supporting facts have no probative value").

Plaintiffs' Motion is based on undisputed evidence supporting each and every element for injunctive relief, as found in the Court's PI Order.  In her Response, the Secretary merely offers the unadorned conclusion that "there remains a factual dispute about the interpretation, and effect of the Secretary's 2014 Advisory Opinion, Directive 2018-01, and Directive 2019-01," and disputes the weight of uncontradicted evidence in Plaintiffs' favor. (ECF No. 104 at 7). Thus, in opposing Plaintiffs' well-supported Motion, the Secretary has not come forward with the "significant, probative evidence" necessary to show a triable issue of fact.

It is inapposite for the Secretary to reference the unremarkable point that "findings made on an application for a preliminary injunction are not controlling at a later hearing on a permanent injunction." *E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1528 n.1 (11th Cir. 1985) (reversing denial of preliminary injunction).  Just because the Secretary might, in theory, introduce evidence to contradict or ultimately overcome preliminary findings of fact, it is not the same as doing so, as legally required.  The evidence presented to support the PI Order remains evidence to support a permanent injunction where, as here, it stands uncontradicted. The Court should, therefore, enter a declaratory judgment and permanent injunction consistent with the PI Order.

### III. CONCLUSION

For the reasons discussed herein, Plaintiffs respectfully request that the Court enter final declaratory judgment in favor of Plaintiffs and convert its PI Order (ECF No. 65 at 3, 38-39) to a permanent injunction, providing that:

(a) The 2014 Opinion violated the First, Fourteenth, and Twenty-Sixth Amendments to the U.S. Constitution;

(b) The Secretary of State is permanently enjoined from implementing or enforcing the Early Voting Statute in any way prohibiting or discouraging the use of any city hall, permanent public library facility, fairground, civic center, courthouse, county commission building, stadium, convention center, government-owned senior center, or government-owned community center for early voting by discriminatory means, including because that facility is related to, designed for, affiliated with, or part of a college or university, or through the facially unsupportable conclusion that a student union or similar civic or community center at a public educational facility does not qualify as either a civic center, convention center, or government-owned community center, or that similar facilities at a private educational facility do not qualify as a civic center.

(c) The supervisors of elections retain discretion under the Early Voting Statute to place early voting sites at any city hall, permanent public library facility,

fairground, civic center, courthouse, county commission building, stadium, convention center, government-owned senior center, or government-owned community center, including any such site as may be related to, designed for, affiliated with, or part of a college or university; and

(d) The Secretary of State shall issue a directive to the supervisors of elections with a copy of the final judgment and permanent injunction.

## LOCAL RULE 7.1(F) CERTIFICATION

Counsel for Plaintiffs, Fritz Wermuth, Esquire, certifies that this motion contains 3138 words.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 7, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

By: */s/ Fritz S. Wermuth*
Florida Bar No.: 0184111
KING, BLACKWELL, ZEHNDER &
WERMUTH, P.A.
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472
Facsimile: (407) 648-0161
fwermuth@kbzwlaw.com

Marc E. Elias
Elisabeth C. Frost*
Amanda Callais*

- 15 -

                Jacki L. Anderson*
                John M. Geise*
                Alexi M. Velez*
                PERKINS COIE LLP
                700 Thirteenth St., N.W., Suite 600
                Washington, D.C. 20005-3960
                Telephone: (202) 654-6200
                Facsimile: (202) 654-9959
                melias@perkinscoie.com
                efrost@perkinscoie.com
                acallais@perkinscoie.com
                jackianderson@perkinscoie.com
                jgeise@perkinscoie.com
                avelez@perkinscoie.com

                *Counsel for Plaintiffs*
                *\*Admitted Pro Hac Vice*